# Nos. 22-1064, 23-1100

## United States Court of Appeals
### FOR THE FIRST CIRCUIT

SAVANNAH KINZER, individually and on behalf of all others similarly situated; HALEY EVANS, individually and on behalf of all others similarly situated; CHRISTOPHER MICHNO, individually and on behalf of all others similarly situated,

*Plaintiffs - Appellants*,

SUVERINO FRITH, individually and on behalf of all others similarly situated; CEDRICK JUAREZ, individually and on behalf of all others similarly situated; FAITH WALSH, individually and on behalf of all others similarly situated; MACKENZIE SHANAHAN, individually and on behalf of all others similarly situated; COREY SAMUEL, individually and on behalf of all others similarly situated; ABDULAI BARRY, individually and on behalf of all others similarly situated; LINDSAY VUONG, individually and on behalf of all others similarly situated; SAMANTHA BERIMBAU, individually and on behalf of all others similarly situated; CAMILLE TUCKER-TOLBERT, individually and on behalf of all others similarly situated; ANA BELEN DEL RIO-RAMIREZ, individually and on behalf of all others similarly situated; LYLAH STYLES, individually and on behalf of all others similarly situated; KAYLA GREENE, individually and on behalf of all others similarly situated; SHARIE ROBINSON, individually and on behalf of all others similarly situated; JENNIFER OSAYANDE, individually and on behalf of all others similarly situated; BRITNEY IFEBOHR, individually and on behalf of all others similarly situated; KANAYA RYLAND, individually and on behalf of all others similarly situated; KIRBY BURT, individually and on behalf of all others similarly situated; LEAVER MICHEL, individually and on behalf of all others similarly situated; SUEPRIYA ADHI, individually and on behalf of all others similarly situated; ALICE TISME, individually and on behalf of all others similarly situated; CHARLES

THOMPSON, individually and on behalf of all others similarly situated; CASSIDY VISCO, individually and on behalf of all others similarly situated; KELLY RIGLER, individually and on behalf of all others similarly situated; JUSTINE O'NEILL, individually and on behalf of all others similarly situated; SARITA WILSON, individually and on behalf of all others similarly situated; YURIN LONDON, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

WHOLE FOODS MARKET, INC.,

*Defendant - Appellee*,

AMAZON.COM, INC.,

*Defendant*.

On Appeal from the U.S. District Court for the District of Massachusetts,
No. 20-cv-11358 (Burroughs, J.)

# BRIEF OF APPELLEE

| | |
|---|---|
| Michael L. Banks | Andrew M. Buttaro |
| MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| 1701 Market Street | One Federal Street |
| Philadelphia, Pennsylvania 19103 | Boston, Massachusetts 02110 |
| T. 215.963.5387 | T. 617.341.7743 |
| | |
| Terry D. Johnson | |
| MORGAN, LEWIS & BOCKIUS LLP | |
| 502 Carnegie Center | |
| Princeton, New Jersey 08540 | |
| T. 609.919.6689 | |

*Counsel for Whole Foods Market, Inc.*

September 25, 2023

## CORPORATE DISCLOSURE STATEMENT

Whole Foods Market, Inc. ("Whole Foods") discloses that it is a privately held corporation and it is a wholly owned subsidiary of Amazon.com, Inc. ("Amazon"), which is a publicly traded corporation. Amazon has no parent corporation, and no publicly held corporation owns 10% or more of Amazon's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ...........................................................................1

STATEMENT OF THE ISSUES.................................................................5

STATEMENT OF THE CASE..................................................................6

    I.    Factual background. ......................................................6

    II.    Procedural background...................................................10

        A.    Some workers sued Whole Foods, and the District Court dismissed all Title VII discrimination claims and nearly all retaliation claims..............................................10

        B.    This Court affirmed, holding that there was a lawful "obvious alternative explanation" for Whole Foods' dress-code enforcement. ...........................................11

        C.    Plaintiffs produced (redacted) text messages but filed an interlocutory appeal of the District Court's discovery order. ...............................................13

        D.    The District Court granted summary judgment on Plaintiffs' remaining claims and now appeal that decision too............................................................16

SUMMARY OF THE ARGUMENT .................................................17

STANDARD OF REVIEW ........................................................19

ARGUMENT ...................................................................20

    I.    The District Court properly granted summary judgment on the retaliation claims. ....................................................20

        A.    Plaintiffs have failed to offer any direct evidence of unlawful retaliation and forfeited this argument by not raising it below.........................................21

        B.    Plaintiffs have failed to show unlawful retaliation by circumstantial evidence under the three-step *McDonnell Douglas* framework. ..........................................24

## TABLE OF CONTENTS
(continued)

**Page**

    1.    Plaintiffs failed to make a prima facie case giving rise to an inference of discrimination. ...........................25

    2.    Whole Foods stated a legitimate, non-discriminatory reason for its termination decisions. .....29

    3.    Plaintiffs cannot show that Whole Foods' legitimate, non-discriminatory reason for the terminations was pretextual. ..........................................30

        a.    Plaintiffs' temporal-proximity argument fails because they were disciplined before any protected activity. .........................................32

        b.    Plaintiffs fail to show that Whole Foods' supposedly unusual termination procedures establish pretext...............................................37

        c.    Plaintiffs' vague argument that they were treated differently than (unidentified) similarly situated co-workers also fails to show pretext. ......................................39

II.    The Court should not address the discovery issue, which is non-justiciable and, regardless, fails on the merits...................................41

    A.    Plaintiffs' requested relief is unripe and non-justiciable, as it prematurely seeks to address issues at a trial that has not occurred...............................................................41

    B.    Regardless of these justiciability defects, Plaintiffs' request for novel relief fails on the merits and should be rejected. ..........................................................45

    C.    The NLRB's amicus position merely duplicates Plaintiffs' flawed argument and fails for the same reasons...........................................................49

CONCLUSION....................................................................50

CERTIFICATE OF COMPLIANCE....................................51

CERTIFICATE OF SERVICE ............................................52

iii

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Adapt of Phila. v. Phila. Hous. Auth.*,
    433 F.3d 353 (3d Cir. 2006) ................................................................45

*Aldapa v. Fowler Packing Co. Inc.*,
    No. 115CV00420DADSAB, 2016 WL 8738176 (E.D. Cal. Mar. 18, 2016).....46

*Benoit v. Tech. Mfg. Corp.*,
    331 F.3d 166 (1st Cir. 2003)................................................................40

*Benson v. Super. Ct. Dep't of Trial Ct. of Mass.*,
    663 F.2d 355 (1st Cir. 1981)...............................................................43

*Burks v. Wis. Dep't of Transp.*,
    464 F.3d 744 (7th Cir. 2006) ..............................................................21

*Carrero–Ojeda v. Autoridad de Energía Eléctrica*,
    755 F.3d 711 (1st Cir. 2014)...............................................................32

*Carter v. George Wash. Univ.*,
    387 F.3d 872 (D.C. Cir. 2004)............................................................21

*Cherkaoui v. City of Quincy*,
    877 F.3d 14 (1st Cir. 2017)..............................................24, 25, 31, 32

*Clark Cnty. School Dist. v. Breeden*,
    532 U.S. 268, 272 (2001)....................................................26, 27, 36

*Clausen v. Sea-3, Inc.*,
    21 F.3d 1181 (1st Cir. 1994)...............................................................45

*Davila v. Corporacion De P.R. Para La Difusion Publica*,
    498 F.3d 9 (1st Cir. 2007)..................................................................30

*Degrandis v. Children's Hosp. Bos.*,
    203 F. Supp. 3d 193 (D. Mass. 2016)..........................................46, 48

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)......................................................................48

*FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*,
  498 U.S. 269 (1991)..................................................................44, 45

*Frazier v. Fairhaven Sch. Comm.*,
  276 F.3d 52 (1st Cir. 2002)................................................................26

*Freadman v. Metro. Prop. & Cas. Ins. Co.*,
  484 F.3d 91 (1st Cir. 2007)...............................................................32

*Frith v. Whole Foods Mkt., Inc.*,
  38 F.4th 263 (1st Cir. 2022).......................................................*passim*

*Hannon v. Beard*,
  645 F.3d 45 (1st Cir. 2011)...............................................................24

*Hazel v. U.S. Postmaster Gen.*,
  7 F.3d 4 (1st Cir. 1993)....................................................................32

*Henderson v. Mass. Bay Transp. Auth.*,
  977 F.3d 20 (1st Cir. 2020)......................................................26, 27, 28, 29

*Houlton Citizens' Coal. v. Town of Houlton*,
  175 F.3d 178 (1st Cir. 1999).............................................................19

*In re Basciano*,
  542 F.3d 950 (2d Cir. 2008) .............................................................43

*In re Guess?, Inc.*,
  339 NLRB 432 (2003)................................................................*passim*

*Jumbo v. Ala. State Univ.*,
  760 F. App'x 918 (11th Cir. 2019).....................................................21

*Lapointe v. Target Corp.*,
  No. 16-CV-216, 2017 WL 1397317 (N.D.N.Y. Mar. 6, 2017).........................47

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Loeb v. Textron, Inc.*,
  600 F.2d 1003 (1st Cir. 1979)..................................................................22

*Lucas v. Gold Standard Baking, Inc.*,
  No. 13 CV 1524, 2017 WL 1436864 (N.D. Ill. Apr. 24, 2017) ........................46

*Maldonado-Gonzalez v. P.R. Police*,
  110 F. Supp. 3d 345 (D.P.R. 2015) ....................................................31

*Marcinuk v. Lew*,
  No. 13-cv-12722, 2016 WL 111409 (D. Mass. Jan. 11, 2016) .........................33

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)......................................................................*passim*

*Mesnick v. Gen. Elec. Co.*,
  950 F.2d 816 (1st Cir. 1991)...............................................................31

*Munoz v. Sociedad Espanola De Auxilio Mutuo y Beneficiencia De P.R.*,
  671 F.3d 49 (1st Cir. 2012).............................................................27, 36

*NLRB v. Me. Coast Reg'l Health Facilities*,
  999 F.3d 1 (1st Cir. 2021)..................................................................48

*Ocasio-Hernández v. Fortuno-Burset*,
  640 F.3d 1 (1st Cir. 2011)..................................................................12

*Oquendo v. Costco Wholesale Corp.*,
  No. 20-1632, 2021 WL 1697873 (1st Cir. Apr. 29, 2021) ................................22

*Patten v. Wal-Mart Stores E., Inc.*,
  300 F.3d 21 (1st Cir. 2002)................................................................22

*Paul v. Murphy*,
  948 F.3d 42 (1st Cir. 2020).............................................................19, 20

*Pearson v. Mass. Bay Transp. Auth.*,
  723 F.3d 36 (1st Cir. 2013)................................................................31

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Pierzchajio v. Nw. Selecta, Inc.*,
   No. CV 17-1682 (PAD), 2019 WL 2323863 (D.P.R. May 31, 2019)...............22

*Pina v. Children's Place*,
   740 F.3d 785 (1st Cir. 2014)................................................................20

*Ponte v. Steelcase Inc.*,
   741 F.3d 310 (1st Cir. 2014)................................................................20

*Powell v. Alexander*,
   391 F.3d 1 (1st Cir. 2004)...................................................................22

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989).........................................................................22

*Project Veritas Action Fund v. Rollins*,
   982 F.3d 813 (1st Cir. 2020)................................................................44

*Rivera-Aponte v. Rest. Metropol #3, Inc.*,
   338 F.3d 9 (1st Cir. 2003)...................................................................31

*Rocafort v. IBM Corp.*,
   334 F.3d 115 (1st Cir. 2003)...........................................................21, 29

*Rodríguez-Cardi v. MMM Holdings, Inc.*,
   936 F.3d 40 (1st Cir. 2019)............................................................31, 39

*Roman Cath. Bishop of Springfield v. City of Springfield*,
   724 F.3d 78 (1st Cir. 2013)...................................................................5

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
   699 F.3d 1 (1st Cir. 2012)...................................................................44

*Soileau v. Guilford of Maine, Inc.*,
   105 F.3d 12 (1st Cir. 1997)...........................................................26, 32

*Taite v. Bridgewater State Univ., Bd. of Trs.*,
   999 F.3d 86 (1st Cir. 2021)................................................................37

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Trainor v. HEI Hosp., LLC,*
    699 F.3d 19 (1st Cir. 2012)..........................................................................13, 36

*Travers v. Flight Servs. & Sys., Inc.,*
    737 F.3d 144 (1st Cir. 2013)...............................................................................40

*Triangle Cayman Asset Co. v. LG & AC, Corp.,*
    52 F.4th 24 (1st Cir. 2022)..................................................................................44

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013)......................................................................................26, 33

*Walton v. Harker,*
    33 F.4th 165 (4th Cir. 2022) ..............................................................................23

**STATUTES**

Title VII of the Civil Rights Act of 1964
    42 U.S.C. § 2000a *et seq.*..........................................................................*passim*
    42 U.S.C. § 2000e–3(a) (§ 704(a)) .......................................................................2

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*..................................................40

National Labor Relations Act, 29 U.S.C. § 151 *et seq.* .........................14, 46, 47, 48

**RULES**

Fed. R. App. P. 4(a)(2)......................................................................................5, 44, 45

**INTRODUCTION**

Plaintiffs' opening brief misconstrues the record and confuses well-established background law on the core retaliation claims that were properly rejected by the District Court. The undisputed facts adduced in discovery confirmed that the three Plaintiffs who have filed this appeal were properly terminated for refusing to abide by a Whole Foods dress code and attendance policy that this Court has already found to be lawful and non-discriminatory. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 267 (1st Cir. 2022).

The policy at issue prohibits employees from wearing clothing (and masks during the Covid-19 pandemic) displaying slogans and messages, whether about politics, social issues, or commercial endorsements. More than two dozen employees filed a lawsuit contending that the policy discriminated against them on the basis of race because it prevented them from wearing masks expressing support for the Black Lives Matter ("BLM") movement. The District Court found the policy to be lawful, and this Court agreed, affirming the dismissal of the underlying race-discrimination claims. *Id.* The original dismissal, however, did not apply to retaliation claims brought by the three workers bringing this appeal—Savannah Kinzer, Haley Evans, and Christopher Michno (collectively, "Plaintiffs")— who contend that "they were unlawfully terminated for opposing Whole Foods' allegedly discriminatory discipline of employees wearing Black Lives Matter masks at work in violation of the

anti-retaliation provision of Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e–3(a)." J.A. 1798.

The parties engaged in extensive discovery on the retaliation claims, and what emerged was a very clear set of undisputed facts. Plaintiffs willfully refused to abide by the Whole Foods dress code and attendance policy and were terminated for that reason, rather than because of any retaliatory animus. The District Court found "little evidence in the record to refute Whole Foods' legitimate business explanations for its strict enforcement of its dress code policy" and its termination of Plaintiffs, and "no significant probative evidence that Whole Foods' stated reasons for its actions concealed any discriminatory animus based on Plaintiffs' oppositional conduct." J.A. 1824.

Now, on appeal, Plaintiffs do nothing to call the District Court's carefully considered decision into question. They do not deny that they violated the Whole Foods policy that they previously challenged unsuccessfully. And while they suggest in passing that they have direct evidence of a Title VII violation, they never made that argument in the District Court, and their conclusory argument confuses direct evidence with circumstantial evidence. Moreover, they fail to cite evidence that would establish even a *prima facie* case of retaliation, let alone evidence that would plausibly convert Whole Foods' articulated reasons for the challenged decisions into

mere pretext. In short, they have presented no basis to overturn summary judgment, and this Court should affirm.

In a separate appeal that has been consolidated with the challenge to the District Court's summary-judgment ruling, Plaintiffs also ask this Court to issue an advisory opinion on a discovery issue which has no bearing on the outcome of the case. Plaintiffs disagree with a discovery ruling that required them to produce text messages with their co-workers about their opposition to, and refusal to abide by, the Whole Foods dress code and attendance policy. They ask this Court to mint a new privilege that would shield their own communications from discovery—based largely on one administrative ruling from the National Labor Relations Board ("NLRB")—and then apply that new privilege to preemptively bar the use of produced messages at a potential trial. This argument faces a number of obstacles, any one of which is independently dispositive.

First, if this Court affirms the summary judgment decision on the retaliation claims, it should bypass this issue entirely. This Court lacks jurisdiction to hear an interlocutory appeal that is irrelevant to the summary-judgment order (i.e., the actual final judgment), and Plaintiffs' request for a premature ruling on a potential trial issue is unripe and non-justiciable.

Second, Plaintiffs' privilege argument is a non-starter on the merits. Every federal court that has considered this discovery issue has rejected attempts to create

a new privilege that would categorically preclude discovery of relevant communications between co-workers. And frankly, Plaintiffs' requested relief makes no sense in the context of this case. The messages in question were produced long ago—with significant redactions—and those redactions remain in place, addressing any potential confidentiality concerns. Were there actually a trial in this matter, the District Court should decide in the first instance how to address use of those messages. This Court should not jump ahead, guess what the trial issues might be, and issue a premature ruling that would hamstring the District Court's discretion. Indeed, given Plaintiffs' vague and shifting discussion of this issue, it is not entirely clear what Plaintiffs even are asking this Court to do.

Plaintiffs try to deflect from these serious legal flaws by turning attention to social-justice issues or generalized notions of workers' rights. But that is not what this case is about. Whole Foods has declared its support for "the black community and meaningful change in the world." J.A. 90, 93; *see also* Br. 21 (acknowledging Whole Foods' support). Whole Foods stands by that support and remains dedicated to those efforts. Like any private employer, however, Whole Foods also has a right to enforce its dress-code and attendance policies in a neutral fashion, which is exactly what it did here. As this Court recognized when it affirmed the previous dismissal in this case, "[c]ommon sense … suggests that Whole Foods would have had

non-race-based reasons in June 2020 for prohibiting the wearing of Black Lives Mat-
ter masks" and other apparel violating the dress code. *Frith*, 38 F.4th at 267. The
Court should pay little heed to Plaintiffs' heavy-handed attempt to trade substantial
legal argument for inflammatory commentary.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over the District Court's order granting summary
judgment. J.A. 1826. This Court does not have jurisdiction over Plaintiffs' interloc-
utory appeal of a discovery order, for multiple reasons. First, Rule 4(a)(2) does not
salvage Plaintiffs' "legally premature" (Br. 12) appeal of the discovery issue. *See
infra*, § II(A). Second, this issue is neither ripe nor justiciable, as Plaintiffs are asking
for a ruling on a mere hypothetical concern about the potential use of already pro-
duced (and redacted) text messages at trial. The District Court has not even had an
opportunity to consider whether (and how, if summary judgment is reversed) the
redacted text messages may be used at trial. *Id*.; *see also Roman Cath. Bishop of
Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) ("[T]he doctrine of
ripeness has roots in both the Article III case or controversy requirement and in pru-
dential considerations." (citation omitted)).

## STATEMENT OF THE ISSUES

1. **Summary judgment**. To survive summary judgment, a plaintiff assert-
ing a Title VII retaliation claim must offer either direct evidence of retaliation, or

alternatively, circumstantial evidence satisfying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiffs failed to offer any direct evidence of retaliation, and all three steps of the *McDonnell Douglas* framework preclude their claim. Did the District Court correctly grant summary judgment on Plaintiffs' remaining claims?

2.     **Discovery issue**. Appellate courts do not consider unripe, hypothetical questions about the potential use of evidence at trial, especially when the trial court has not even had an opportunity to consider such arguments. Moreover, to the extent that Plaintiffs are seeking a blanket rule that co-workers cannot be required to produce relevant communications between them, or that such messages may never be used in the litigation, they are in uncharted waters, as no federal court has adopted this novel privilege. Should this Court decline to address this issue on justiciability grounds, or alternatively, deny this request on the merits?

## STATEMENT OF THE CASE

### I.     Factual background.

Whole Foods is a leading chain of natural and organic food supermarkets, with hundreds of grocery stores throughout the United States. *See* J.A. 235, 1799. Whole Foods has long had a dress code policy for "Team Members" who work in its stores. J.A. 1799–1801. The policy sets a "baseline standard" for all stores, and

under it, Team Members may not wear masks or clothing with visible slogans, messages, logos, or advertising unrelated to Whole Foods. *Id*. The dress code is important to Whole Foods and its customer-centric environment. J.A. 1813. The dress code keeps the customer experience focused on Whole Foods's merchandise, especially its natural and organic foods, rather than social and political causes or issues. *Id*. The dress code also provides uniformity across stores, promotes a professional image, and ensures a safe environment for customers and employees. *See id*.

In April 2020, with the onset of the Covid-19 pandemic, grocery-store workers were required to wear masks at work to minimize the spread of infection. J.A. 1801. Facemasks worn by store workers, as with other apparel, were expected to comply with the dress code. *Id*. Over the coming months, however, there "was an increase in dress code violations by retail workers" in Whole Foods stores. *Id*. By June, Whole Foods store leaders were "directed to handle violations of the dress code with a consistent, progressive discipline policy that gave employees an opportunity to comply or be sent home, which would result in an attendance violation." *Id*. "If the policy violations persisted, stores were instructed to follow their usual progressive discipline process." *Id*. This appeal involves three workers who were disciplined for willful and repeated refusals to comply with the policy.

**Savannah Kinzer**. In April 2020, Kinzer started working at a Whole Foods store in Cambridge, Massachusetts. J.A. 1805. In June, she started wearing a BLM

facemask. *Id*. That same day, the store leader instructed workers that such "masks violated the dress code policy and all team members who refused to take off the masks were sent home." J.A. 1806. Kinzer, however, continued to wear the mask in defiance of the dress-code policy, and in late June and early July, she was sent home "approximately six more times," incurring an attendance point each time. *Id*. Kinzer incurred additional points, unrelated to the dress code, for frequent attendance violations. *Id*.

In July 2020, Kinzer filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), "asserting that Whole Foods' discipline of employees who wore a Black Lives Matter mask to work was unlawfully discriminatory and retaliatory." J.A. 1807. Shortly thereafter, Kinzer "again arrived late to work, thus accruing her fourth attendance point since receiving her final written warning." *Id*. Kinzer attributed her late showing "to a stolen bike tire." *Id*. Following this latest violation, the store leader terminated Kinzer "based on the accumulation of her attendance points." *Id*. Kinzer has not denied that she violated the Whole Foods dress code or attendance policies.

**Haley Evans**. In 2017, Evans started working for a Whole Foods store in New Jersey. J.A. 1802. After an extended leave of absence (unrelated to the legal issues in this case), Evans returned to work in June 2020. *Id*. Days later, she began wearing a BLM facemask. *Id*. Supervisors promptly informed Evans that the mask violated

the dress code and asked her to "remove the mask or leave." J.A. 1803. Evans chose to leave the store rather than remove the mask and continue to work. *Id.*

Before her next scheduled shift, Evans "called out of work," but went to the store to meet with a supervisor, who reiterated the dress-code policy applying to face masks. *Id.* Evans nevertheless wore a non-compliant mask during each of her next four scheduled shifts. *Id.* On each day, Evans "worked until a manager asked her to change her mask, and when she refused, she was sent home." *Id.* After these incidents, Whole Foods leadership again reached out to Evans to discuss the policy and "encouraged her to come to work," while making clear that "continued violations of store policies would warrant further discipline." *Id.* Evans received a "written warning for violating the attendance policy because she had," under the discipline policy, "accrued at least three absences within a 30-day period." *Id.* Evans was sent home twice more in July for violating the dress code. *Id.* After receiving a final warning, Evans was terminated. *Id.*

**Christopher Michno**. In 2017, Michno started working at Whole Foods store in Berkeley, California. J.A. 1808. In June or July 2020, Michno began wearing a BLM mask. *Id.* In July, Michno "received his first corrective action for violating the dress code." J.A. 1809. "Michno stopped wearing the Black Lives Matter mask to work for fear of being terminated, but" started wearing it again over the coming weeks and months. *Id.* In September, Michno received "more corrective actions,"

and later that month, he was "notified that his employment was being terminated for repeated dress code violations." J.A. 1810.

## II.     Procedural background.

### A.     Some workers sued Whole Foods, and the District Court dismissed all Title VII discrimination claims and nearly all retaliation claims.

In July 2020, a group of plaintiffs—alleged current or former Whole Foods workers—brought a putative class action against the company, alleging that Whole Foods' dress code and attendance policy discriminated against employees on the basis of their race and therefore violated Title VII. J.A. 17. Soon after, the plaintiffs submitted an amended complaint, asserting two Title VII claims: one for unlawful discrimination, and one for unlawful retaliation. J.A. 45, 52–53.

The District Court dismissed all of the claims except for a single retaliation claim by Plaintiff Kinzer, who alleged that she was terminated because she had complained about a policy that she considered to be discriminatory. J.A. 1811. The District Court then entered a final judgment in Defendants' favor on all claims except "Kinzer's claim for retaliation against Defendant Whole Foods." J.A. 1812. Plaintiffs appealed to this Court. J.A. 15.

**B.    This Court affirmed, holding that there was a lawful "obvious alternative explanation" for Whole Foods' dress-code enforcement.**

This Court affirmed the District Court's dismissal order, although its "reasoning differ[ed] somewhat from that of the district court." *Frith*, 38 F.4th at 267. Describing Plaintiffs' claims as "wholly conclusory" or in the "realm of pure conjecture," this Court noted that "[c]ommon sense … suggests that Whole Foods would have had non-race-based reasons in June 2020 for prohibiting the wearing of Black Lives Matter masks." *Id*. at 275. "At that time, the coronavirus pandemic had created the conditions for employees to easily and in a highly visible fashion display non-company messages at work," making it "logical that Whole Foods would have a different perspective on enforcing its dress code policy in the era of employee mask-wearing." *Id*. Plaintiffs "acknowledge[d]" that "the wearing of the Black Lives Matter masks appears to have been a more coordinated and widespread effort than previous displays by Whole Foods employees of, for example, support for the LGBTQ+ community." *Id*. And "rightly or wrongly, Black Lives Matter was seen as a controversial message associated with a political movement advancing an array of policy proposals." *Id*. This shows that "the timing of Whole Foods' decision to begin enforcing its existing policy may be explained by the 'obvious alternative explanation' that Whole Foods did not want to allow the mass expression of a controversial message by employees in their stores." *Id*. (citation omitted).

11

This "obvious alternative explanation" found additional support in Whole Foods' public statements on social-justice issues. *Id*. For example, "Whole Foods posted on its website, 'Racism has no place here' and 'We support the black community and meaningful change in the world.'" *Id*. n.11. This is "consistent with the obvious alternative explanation that, in prohibiting the employee masks, Whole Foods was not expressing dislike of the pro-Black aspect of the 'Black Lives Matter' message but was simply motivated to control the manner of dissemination of such a message in its stores." *Id*. Simply put, a court "cannot infer racial discrimination based on factual allegations that are 'just as much in line with'" a non-discriminatory explanation like that identified by the Court. *Id*. at 276 (quoting *Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 9 (1st Cir. 2011)).

The Court also rejected the appellants' retaliation claims. It noted that the "appellants' retaliation theory is premised on their allegation that, at some point after Whole Foods began prohibiting the wearing of Black Lives Matter masks at work, they wore the masks to oppose what they believed to be discriminatory enforcement of the dress code." *Frith*, 38 F.4th at 277. "But appellants must plausibly allege that Whole Foods' continuing enforcement of its dress code policy was caused by their oppositional conduct—i.e., that any retaliatory discipline was distinguishable from the preexisting and ongoing discipline of employees simply for wearing the Black Lives Matter masks." *Id*. This "is simply a function of logic"—after all, "to establish

that an adverse employment action was caused by an employee's protected activity, the employer's decision to act adversely to the employee must postdate the protected activity." *Id.* (quoting *Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 27 (1st Cir. 2012)).

The appellants fell well short of that standard. The operative complaint alleged "no more than that Whole Foods began enforcing the dress code to prohibit Black Lives Matter face masks in June 2020 and, from that point on, consistently enforced its dress code policy against the mask-wearing." *Frith*, 38 F.4th at 278. This failed to "allege the necessary causal relationship between Whole Foods' continuing enforcement of the dress code policy and their wearing of the masks to protest that enforcement," so dismissal was required. *Id.*

### C. Plaintiffs produced (redacted) text messages but filed an interlocutory appeal of the District Court's discovery order.

While the first appeal was before this Court, the parties continued to litigate the remaining claims in the District Court. *See* J.A. 13–24. After the District Court's dismissal, Kinzer submitted a second amended complaint that added two plaintiffs, Evans and Michno, both of whom had been terminated for policy violations. J.A. 89. Whole Foods answered and the parties proceeded to discovery. J.A. 14. Several discovery disputes arose, including one regarding messages between Kinzer and co-workers. J.A. 15–16.

The discovery dispute first surfaced at an August 2021 deposition, when Kinzer testified that she exchanged group messages with "co-workers" to provide "updates on the case," and identified several of those co-workers by name. J.A. 118, 130. This was surprising, because Plaintiffs had not produced these communications, even though they were responsive to Whole Foods' document requests. J.A. 107–108, 118, 176. Following the deposition, Whole Foods requested that the messages be produced, but Plaintiffs refused. J.A. 107–08. Plaintiffs asserted that the messages were attorney-client privileged, and as an aside, also claimed that they reflected "concerted activity" among employees under the National Labor Relations Act ("NLRA"). J.A. 111–14. In response, Whole Foods observed that Plaintiffs offered "no support for their attempt to invoke a general NLRA privilege," and cited decisions recognizing "that no such privilege exists." J.A. 115–19.

The District Court agreed with Whole Foods and rejected Plaintiffs' arguments. J.A. 137–39. Noting that Plaintiffs did "not dispute the relevance of the group chats," it ordered them produced. *Id*. The District Court explained that "federal courts have not recognized" Plaintiffs' asserted concerted-activity privilege as a blanket barrier to disclosure of relevant materials. *Id*. (collecting cases). Plaintiffs were ordered to produce the messages. *Id*.

Minutes before the deadline to produce the messages, Plaintiffs sought to "defer" the deadline, explaining that they had filed a new NLRB charge complaining

that Whole Foods had attempted to interfere with their "concerted activity." J.A. 141. Whole Foods opposed that request, and the District Court ordered yet again that Plaintiffs must produce the messages. J.A. 230. Plaintiffs again sought to stay production, which the District Court denied. J.A. 589, 605.

Over the following weeks, Plaintiffs produced more than 2,000 pages of documents, largely group-chat messages from Facebook. J.A. 22–23. Plaintiffs redacted all third-party names and marked every page "Highly Confidential" under the discovery confidentiality protective order, essentially prohibiting disclosure to anyone except outside legal counsel. *See id*. Those redactions remain in place to this day, such that the production does not reveal the identities of current or former Whole Foods employees who are not involved in the litigation. *See id*.[1]

In January 2022, Plaintiffs appealed the District Court's orders compelling production of the text messages. *Kinzer v. Whole Foods Mkt., Inc*., No. 22-1064 (1st

---

[1] Months later, the District Court ordered these documents de-designated. J.A. 1795–97. It noted that Plaintiffs failed to explain which participants in the group-chat messages still worked for Whole Foods and why former workers would have any privacy interests in the messages. *Id*. The District Court added that Plaintiffs, in producing the messages, redacted the names of all third parties, so "the possible consequences of disclosure" were "significantly mitigated." *Id*.

Taking up Plaintiffs' related motion, the District Court also ordered unsealed two exhibits included in Whole Foods' summary-judgment briefing—Exhibits L and M, containing just four pages of messages. J.A. 1797. The District Court found that Whole Foods made "limited use" of those messages in briefing and there was "no reason to keep the messages confidential." *Id*. Despite the District Court's unsealing order, before this Court, Plaintiffs have filed Exhibits L and M ex parte under seal.

Cir.). Weeks after docketing the appeal, this Court issued an order requiring Plaintiffs to voluntarily dismiss the appeal or "show cause … why this appeal should not be dismissed for lack of jurisdiction." Order (Mar. 31, 2022). Both parties briefed the jurisdictional issue. *See* Br. (Apr. 28, 2022); Br. (Oct. 21, 2022).

### D.    The District Court granted summary judgment on Plaintiffs' remaining claims and now appeal that decision too.

In January 2023, while the interlocutory appeal of the discovery issue was pending, the District Court granted summary judgment on the remaining claims. J.A. 1798–1826. The Court reviewed the undisputed summary-judgment evidence and this Court's previous decision affirming dismissal J.A. 1798–1825. Noting that Title VII cases "rarely provide direct proof of an employer's unlawful motivations," the District Court employed the familiar burden-shifting framework set forth in *McDonnell Douglas*. J.A. 1815. The District Court rested its decision on step three of that framework, considering whether Plaintiffs presented "enough evidence to raise a jury question as to discriminatory intent." J.A. 1820. The District Court found that Plaintiffs failed to do so, rejecting Plaintiffs' arguments that Whole Foods supposedly "deviated from the normal termination procedures" in firing Plaintiffs. The Court rejected Plaintiffs' factually unsupported argument that they were treated differently from other (unidentified) "similarly situated" co-workers, and that the temporal proximity between Plaintiffs' alleged protected activity and termination suggested pretext. J.A. 1820–23.

The District Court explained that "there is little evidence in the record to refute Whole Foods' legitimate business explanations for its strict enforcement of its dress code policy against the wearing of Black Lives Matter masks and its termination of Plaintiffs as a result" and "there is no significant probative evidence that Whole Foods' stated reasons for its actions concealed any discriminatory animus based on Plaintiffs' oppositional conduct." J.A. 1824. Because "a factfinder could not reasonably conclude that Whole Foods would not have disciplined and terminated Plaintiffs if it were not for their protected activities," summary judgment was proper. *Id*.

Plaintiffs appealed the summary-judgment order, and this Court consolidated that appeal (No. 23-1100) with the pending interlocutory appeal of the discovery issue (No. 22-1064).

## SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment on the remaining claims and this Court should affirm.

Plaintiffs' Title VII retaliation claims fail on multiple grounds. A Title VII plaintiff may attempt to establish retaliation by direct or circumstantial evidence. Plaintiffs briefly argue that they have direct evidence of a Title VII violation, but they never made that argument in the District Court, thus waiving it. And in any event, Plaintiffs cannot point to any direct evidence supporting their claims.

17

Plaintiffs' alternative argument, which is based on the three-step *McDonnell Douglas* framework applicable to claims based on circumstantial evidence, also fails. At step one, Plaintiffs fail to establish their prima facie case because, even if they engaged in protected conduct, there was no causal connection between that conduct and their terminations. At step two, they attempt to challenge Whole Foods' legitimate, non-discriminatory explanation for Plaintiffs' terminations, but they never made that argument in the District Court (again, waiving it on appeal) and their conclusory argument also fails on the merits, as this Court's previous decision confirms. At step three, Plaintiffs fail to establish pretext, as the District Court correctly held. Plaintiffs attempt to show pretext based on a supposedly close temporal proximity between their alleged protected activity and termination, but they ignore that they were disciplined before engaging in any alleged protected activity. Plaintiffs' argument that Whole Foods' leadership had unusual involvement in Plaintiffs' terminations also fails, as the District Court held (as did this Court previously) that such involvement was neither surprising or inappropriate. Finally, Plaintiffs fail to show pretext by contending that they were treated differently than similarly situated co-workers, as Plaintiffs do not identify any similarly situated employee who violated the dress-code policy in the same way as Plaintiffs and was treated differently than Plaintiffs.

Plaintiffs' challenge to the District Court's discovery ruling is even more far-fetched. Preliminarily, it is extraneous to the judgment below; if this Court affirms the entry of summary judgment, it need not address a discovery ruling that had nothing to do with the disposition of the retaliation claims. Moreover, this Court lacks jurisdiction to hear an interlocutory appeal that is irrelevant to the summary-judgment order, and Plaintiffs' request for a premature ruling on a hypothetical trial issue is unripe and non-justiciable. And finally, even if Plaintiffs could overcome these obstacles and present a justiciable issue arising from the challenged discovery ruling, their appeal fails on the merits. This Court should decline to be the first to recognize a brand-new privilege, apply it to messages that have already been produced with redactions (thus, eliminating any confidentiality concerns), and prematurely issue a ruling governing the hypothetical use of these messages at trial.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Paul v. Murphy*, 948 F.3d 42, 49 (1st Cir. 2020) (citation omitted). In doing so, it "may affirm a grant of summary judgment 'on any ground revealed by the record.'" *Id*. (quoting *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir. 1999)). The moving party is entitled to summary judgment when the record, viewed in the light most favorable to the nonmoving party, "discloses no genuine issue of

material fact" and thus "demonstrates that the moving party is entitled to a judgment as a matter of law." *Murphy*, 948 F.3d at 49 (citations omitted).

This Court "review[s] challenges to a district court's discovery determinations under an abuse of discretion standard." *Pina v. Children's Place*, 740 F.3d 785, 790–91 (1st Cir. 2014) (noting that appellate courts "seldom intervene in discovery questions" and "[t]he standard of review in discovery matters is not appellant-friendly"). Thus, this Court "will intervene in such matters only upon a clear showing of manifest injustice," when "the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Id.* (internal quotation marks omitted).

## ARGUMENT

### I.    The District Court properly granted summary judgment on the retaliation claims.

A Plaintiff asserting a Title VII retaliatory termination claim may rely on direct or circumstantial evidence. "Retaliatory termination claims based on circumstantial evidence are evaluated using the *McDonnell Douglas* burden-shifting framework." *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014). On appeal, Plaintiffs contend that their claims are supported by both direct and circumstantial evidence. They are mistaken on both fronts.

**A.    Plaintiffs have failed to offer any direct evidence of unlawful retaliation and forfeited this argument by not raising it below.**

Plaintiffs contend that they "have direct evidence of unlawful retaliation" because, in their view, "Whole Foods has admitted, and indeed has consistently maintained, that it fired Plaintiffs for continuing to wear BLM masks." Br. 44. This statement is factually misleading, and Plaintiffs' direct-evidence argument is misplaced.

As a starting matter, Plaintiffs never made this direct-evidence argument in the District Court, which is why the District Court analyzed their claims under the *McDonnell Douglas* framework. *See* J.A. 1815; *see also* ECF No. 127. Having failed to make this argument below, Plaintiffs cannot now raise it on appeal. *Rocafort v. IBM Corp.*, 334 F.3d 115, 121 (1st Cir. 2003) ("[A] litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal."); *see also Jumbo v. Ala. State Univ.*, 760 F. App'x 918, 920 (11th Cir. 2019) (holding that the plaintiffs waived their direct-evidence argument "because they raised it for the first time on appeal and never objected to the application of *McDonnell Douglas* in the district court despite ample opportunity to do so"); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006) (holding that the plaintiff "did not rely on the direct method of proof in the district court, and arguments not made before the district court are waived on appeal"); *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (applying burden-shifting framework of *McDonnell Douglas* because the plaintiff "never claimed in the district

court, as she does here, that the record contains direct evidence of discrimination," waiving the argument (collecting cases)).

Waiver aside, Plaintiffs' argument fails on the merits. As this Court and many others have recognized, a true direct-evidence case—in which direct evidence alone establishes that discrimination was the sole reason for an adverse decision—"is relatively rare." *Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002) (quotation marks and citation omitted). In "most employment discrimination cases, … direct evidence of discrimination is likely to be unavailable." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979), *abrogated by Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985). In fact, the very purpose of the *McDonnell Douglas* "framework is 'to compensate for the fact that direct evidence of intentional discrimination is hard to come by.'" *Pierzchajio v. Nw. Selecta, Inc.*, No. CV 17-1682 (PAD), 2019 WL 2323863, at *4 n.14 (D.P.R. May 31, 2019) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring)); *see also Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004) ("A retaliatory state of mind typically is not susceptible to proof by direct evidence." (citations and quotations omitted)).

Here, Plaintiffs cannot possibly show that this is the rare case with direct evidence of a Title VII violation. *Oquendo v. Costco Wholesale Corp.*, No. 20-1632,

22

2021 WL 1697873, at \*2 n.2 (1st Cir. Apr. 29, 2021) (rejecting the plaintiffs' argument to circumvent "*McDonnell Douglas* because (according to her) she presented direct evidence of discrimination," finding the record lacked direct evidence). Indeed, Plaintiffs' argument is particularly brazen, considering that Plaintiffs failed to make their case via circumstantial evidence at summary judgment, let alone by direct evidence. *See* J.A. 1798, 1826.

In any event, Plaintiffs' direct-evidence argument is paper-thin and easily rejected. Contrary to Plaintiffs' argument, Whole Foods never "admitted" or "consistently maintained … that it fired Plaintiffs for continuing to wear BLM masks," as Plaintiffs assert. Br. 44. To the contrary, Whole Foods provided "a legitimate, non-discriminatory business reason for Plaintiffs' terminations: specifically, Plaintiffs' repeated violations of Whole Foods' dress code and attendance policies." J.A. 1820. The violations were not premised on the particular message on the mask, but rather on Plaintiffs' repeated insistence on wearing of masks with a slogan or message in direct contravention of company rules. And even if Plaintiffs' assertion was factually accurate (it is not), this obviously is not "direct evidence," or "evidence which, if believed, would prove the existence of a fact without any inference or presumptions." *Walton v. Harker*, 33 F.4th 165, 176 (4th Cir. 2022) (citation omitted).

Here, Plaintiffs are asking the Court to infer "that Whole Foods' proffered reason for terminating their employment was pretextual." J.A. 1815. This requires

the Court to surmise that Whole Foods harbored discriminatory animus toward Plaintiffs for their mask-wearing and that Whole Foods' legitimate, non-discriminatory explanation for terminating Plaintiffs is false. By definition, this is not "direct evidence" of retaliation—it is indirect, circumstantial evidence, as the parties and the District Court recognized in addressing Plaintiffs' claims under the *McDonnell Douglas* framework. J.A. 1815. Because Plaintiffs offer no direct evidence—i.e., evidence that would prove retaliation without the need for inference or interpretation—this Court should reject Plaintiffs' forfeited direct-evidence argument.[2]

**B.  Plaintiffs have failed to show unlawful retaliation by circumstantial evidence under the three-step *McDonnell Douglas* framework.**

When "there is no direct evidence of discrimination," a plaintiff "must rely on the three-stage burden-shifting framework outlined in *McDonnell Douglas*." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 24 (1st Cir. 2017) (internal quotation marks and citation omitted). At step one of this framework, "a plaintiff bears the initial

---

[2] Plaintiffs are fundamentally confused as to what direct evidence is in this context. For instance, they argue that "there is direct evidence of retaliation based upon the close temporal proximity between Plaintiffs' other protected conduct and terminations." Br. 37. But "temporal proximity" is "circumstantial evidence," not "direct proof," which is why the District Court addressed Plaintiffs' temporal-proximity argument under the *McDonnell-Douglas* framework. *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011); *see also* J.A. 1798. Plaintiffs also appear to argue that their "good faith" and "reasonable" belief of a Title VII violation amounts to direct evidence, but it is no such thing; that inquiry is relevant to the prima facie case at *McDonnell Douglas* step one. Br. 43–44.

burden of proffering evidence sufficient to establish a prima facie case of discrimination." *Id*. Step two applies once a plaintiff has made a prima facie showing and has created "a rebuttable presumption that" the defendant "engaged in discrimination." *Id*. (internal quotation marks and citation omitted). At this second stage, the defendant may "rebut this presumption by pointing to evidence of a legitimate, non-discriminatory reason for the challenged conduct." *Id*. (internal quotation marks and citation omitted). If the defendant is able to make that showing, at step three, "the presumption of discrimination disappears and the burden of production again shifts to" the plaintiff, who must offer evidence that the defendant's "explanation is pretextual and that discriminatory animus prompted the adverse action." *Id*. Every step of this analysis supports Whole Foods.

### 1. Plaintiffs failed to make a prima facie case giving rise to an inference of discrimination.

At step one, to establish a prima facie case of retaliation under Title VII, a plaintiff must show that the plaintiff "undertook protected conduct," the plaintiff "suffered an adverse employment action," and "the two were causally linked." *Cherkaoui*, 877 F.3d at 28. Plaintiffs fail to make a prima facie case because, even if they engaged in protected conduct, there was no causal connection between that conduct and the adverse employment action (i.e., termination).

25

Under Title VII, the traditional principles of "but-for" causation apply, meaning that Plaintiffs must prove the adverse employment actions would not have occurred but for their protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). To that end, "[c]ausation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim." *Henderson v. Mass. Bay Transp. Auth.*, 977 F.3d 20, 40 (1st Cir. 2020). Thus, temporal proximity may support "an inference of causation" only "when the record shows that the decisionmaker knew of the … protected conduct when he or she decided to take the adverse employment action." *Id.* (citation and internal quotations omitted). For this reason, temporal proximity alone cannot give rise to an inference of retaliation when gradual adverse job actions began before the plaintiff ever engaged in protected conduct. *See, e.g., Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002) (relying on Title VII jurisprudence and affirming dismissal of Title IX retaliation claim where adverse conduct occurred both before and after plaintiffs' protests); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) (affirming summary judgment for lack of causation where plaintiff had been "disciplined and warned of discharge if his performance did not improve" prior to engaging in protected conduct).

Applying this law here, it is clear that there is no causal connection between Plaintiffs' protected conduct and their terminations.

**Kinzer**. Kinzer's only actionable protected activity was the filing an EEOC charge. But by her own account, Kinzer first notified Whole Foods management of that charge in the afternoon of July 18, 2020, which was *after* she accrued her final attendance point for again showing up late to work (making termination essentially a *fait accompli*) and after Whole Foods had decided to terminate her. J.A. 252, 1807. For that reason alone, Kinzer cannot show causation. *Henderson*, 977 F.3d at 40.

Even if Kinzer had reported the charge before the termination decision had been finalized, she still cannot establish causation. Employers are not required to suspend previously planned employment actions "upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Breeden*, 532 U.S. at 272; *see also Munoz v. Sociedad Espanola De Auxilio Mutuo y Beneficiencia De P.R.*, 671 F.3d 49, 56 (1st Cir. 2012) (recognizing that causation cannot be established "when the adverse employment decision was contemplated but 'not yet definitively determined' before the protected activity took place"). In other words, Kinzer's retaliation claim should be dismissed because Whole Foods began its course of conduct in disciplining her for violations of the attendance policy—includ-

ing issuing a final written warning on July 8, 2020—and, at minimum, contemplating the termination of her employment for arriving late on July 18, 2020, before Whole Foods learned of her EEOC charge. J.A. 1805–08.

**Evans**. It is undisputed that Evans did not inform Whole Foods of her involvement in this litigation until after she was terminated. J.A. 290, 338, 1802–05. Thus, she cannot rely on that conduct to support her retaliation claim. *See Henderson*, 977 F.3d at 40. Evans also cannot show a causal connection between her reporting the February 2019 remark from a co-worker and her August 2020 termination. J.A. 1804. Even putting aside that this incident did not involve protected conduct, as the District Court correctly held, the 18-month gap between the incident and her termination is far too attenuated to support an inference of causation. J.A. 1802–05, 1819 (collecting cases).

**Michno**. As for Michno, he did not file an administrative charge or join this lawsuit until after he had already been terminated from Whole Foods, so those actions cannot serve as the basis for his retaliation claim. J.A. 1808–11; *see Henderson*, 977 F.3d at 40. Michno's statement vaguely referencing discrimination—offered in response to his final written warning—also cannot be the but-for cause of his termination because he made that statement after he received a final written warning for intentionally violating Whole Foods' dress code. J.A. 1810. Whole Foods was not

28

required to halt a course of discipline, started months earlier, simply because of Michno's last-minute statement. J.A. 1808–11.

In short, Plaintiffs fail to make their prima facie case—and thus, cannot survive *McDonnell Douglas* step one—because, even if they engaged in protected conduct, there was no causal connection between that conduct and the adverse employment action (i.e., termination).

### 2. Whole Foods stated a legitimate, non-discriminatory reason for its termination decisions.

At step two of the *McDonnell Douglas* framework, Whole Foods "articulated a legitimate, non-discriminatory business reason for Plaintiffs' terminations: specifically, Plaintiffs' repeated violations of Whole Foods' dress code and attendance policies." J.A. 1820. Plaintiffs attempt to question whether Whole Foods met this minimal burden, suggesting almost in passing that Whole Foods "failed to state a non-discriminatory reason for the terminations." Br. 48–49.

Plaintiffs did not raise this issue below, conceding the point and forfeiting any challenge in this Court. *See* J.A. 1819; *Henderson*, 977 F.3d at 33 (holding argument about pretext was waived because it was not raised before the district court and was insufficiently developed on appeal); *Rocafort*, 334 F.3d at 121 (1st Cir. 2003) (declining to consider argument not adequately addressed as part of summary-judgment argument, calling it "crystalline" that such an argument may not be first raised on appeal (citation omitted)).

Plaintiffs belated challenge also fails on the merits. At step two of the *McDon-nell Douglas* framework, "[t]he employer's burden is not a burden of persuasion; the employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." *Davila v. Corporacion De P.R. Para La Difusion Publica*, 498 F.3d 9, 16 (1st Cir. 2007). Whole Foods' assertion of a legitimate, non-discriminatory reason for its termination decisions easily clears that low threshold. As the District Court correctly found, "Whole Foods has articulated a legitimate, non-discriminatory business reason for Plaintiffs' terminations: specifically, Plaintiffs' repeated violations of Whole Foods' dress code and attendance policies." J.A. 1820. This Court's previous decision confirms the correctness of that finding, as it was "[c]ommon sense" that "the timing of Whole Foods' decision to begin enforcing its existing policy may be explained by the 'obvious alternative explanation' that Whole Foods did not want to allow the mass expression of a controversial message by employees in their stores." *Frith*, 38 F.4th at 275.

> **3.    Plaintiffs cannot show that Whole Foods' legitimate, non-discriminatory reason for the terminations was pretextual.**

At *McDonnell Douglas* step three, "Plaintiffs must present enough evidence to raise a jury question as to discriminatory intent." J.A. 1820. The District Court correctly held that, on this issue, Plaintiffs failed to present evidence that would preclude summary judgment. *Id*.

Establishing pretext is difficult, and this showing is "more demanding than the assessment of whether a prima facie case has been established." *Id.* (quoting *Maldonado-Gonzalez v. P.R. Police*, 110 F. Supp. 3d 345, 355 (D.P.R. 2015)). A plaintiff cannot merely "'impugn the veracity' of the employer's proffered reason" or reasons, but instead, "a plaintiff must proffer *specific facts* that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover up the employer's true motive." J.A. 1820 (quoting *Cherkaoui*, 877 F.3d at 27); *see also Rivera-Aponte v. Rest. Metropol #3, Inc.*, 338 F.3d 9, 12 (1st Cir. 2003) (explaining that a plaintiff "must do more than cast doubt on the rationale" offered by the defendant). A plaintiff also cannot establish pretext by merely showing a "business error" or questionable business judgments. *Rodríguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 48 (1st Cir. 2019) ("[P]retext means something worse than a business error."); *see also Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 41 (1st Cir. 2013) ("Mere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext."). Thus, "a court's focus must be on whether the employer believed its stated reason to be credible." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991).

Plaintiffs make three arguments in an attempt to show pretext, based on: (a) the "timing of events," (b) supposedly "'[u]nusual' involvement of and discus-

sions among Whole Foods senior management," and (c) so-called "favorable treatment" of unnamed similarly situated employees. Br. 51–55 (capitalization altered). Plaintiffs are wrong on all points.[3]

### a. Plaintiffs' temporal-proximity argument fails because they were disciplined before any protected activity.

Plaintiffs attempt to show pretext based on a supposedly close temporal proximity between their allegedly protected activity and termination is wrong on both the law and the facts.

Preliminarily, it bears emphasis that while "temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough—especially if the surrounding circumstances undermine any claim of causation." *Cherkaoui*, 877 F.3d at 27 (quoting *Carrero–Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 720 (1st Cir. 2014)). As this Court has warned, a "narrow focus" on timing often "ignores the larger sequence of events and also the larger truth." *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 100–01 (1st Cir. 2007) (quoting *Soileau*, 105 F.3d at 16). Importantly, Title VII retaliation claims must be

---

[3] Plaintiffs' pinballing arguments should not obscure the larger picture, which is that Plaintiffs admitted to engaging in all of the conduct leading to the termination decisions. *See, e.g.*, J.A. 246–48, 252, 255. These admissions alone preclude them from establishing pretext. *Hazel v. U.S. Postmaster Gen.*, 7 F.3d 4 (1st Cir. 1993) (holding that the plaintiff's "admission that he refused to report for work and the evidence that the [defendant] fired him for that very reason provided a 'plausible' basis for the district court's finding that retaliation is not the most likely reason [that the plaintiff] was fired").

proved by "but-for causation." *Nassar*, 570 U.S. at 360. In other words, a "plaintiff's retaliation claim … fails unless the plaintiff can show 'that the desire to retaliate was the but-for cause of the challenged employment action,'" rather than just a motivating factor. *Marcinuk v. Lew*, No. 13-cv-12722, 2016 WL 111409, at \*2 (D. Mass. Jan. 11, 2016), *aff'd*, No. 16-cv-01182, 2017 WL 3595503 (1st Cir. Feb. 2, 2017).

Applying this standard here, Plaintiffs' temporal-proximity argument falls flat. Most notably, the undisputed summary-judgment evidence showed "that Whole Foods began issuing disciplinary points for Plaintiffs' policy violations before they even began engaging in protected conduct." J.A. 1824. This is true for all three Plaintiffs.

Starting with Kinzer, Plaintiffs contend that the timing is "starkly revealing" because "Kinzer filed a claim with the EEOC on July 18, 2020, and informed her manager of the filing shortly thereafter," and "[m]ere hours after informing her manager, Whole Foods terminated her employment." Br. 51. This myopic narrative is misleading. As early as June 24, 2020, Kinzer was informed that she had violated the dress code. J.A. 1806. Kinzer was sent home for dress-code violations "approximately six more times between June 25 and July 4, 2020 and was given an attendance point each time." *Id*. On July 8, 2020, Kinzer received a "verbal warning because she had accumulated at least five attendance points within a 30-day period, and an additional final written warning for a separate violation of the attendance

policy unrelated to her noncompliance with the dress code." *Id*. Kinzer then "earned two more attendance points on July 10 and 12 for arriving to work late." *Id*. "On July 18, 2020, Kinzer again arrived late to work, thus accruing her fourth attendance point since receiving her final written warning on July 8." *Id*. On that date, Kinzer's team leader notified her that, due to this latest tardiness, she had accrued her "final point" under Whole Foods' disciplinary policy. *Id*. After a "final point" is accrued, the next step is termination. J.A. 1799–800. Kinzer maintains that she first notified her team leader of the EEOC charge in the afternoon of July 18, 2020. J.A. 1807–08. But by that time, she already exhausted her final points under Whole Foods' progressive-discipline program, making termination a foregone conclusion. *See* J.A. 1799–800.

Plaintiffs' argument as to Evans fails for similar timing reasons. They contend that Evans was disciplined only "after she gave an interview to the media about Whole Foods' discriminatory policies and raised the issue with several supervisors," and "Evans was terminated the very next day after she was added as a named plaintiff to this lawsuit." Br. 51. This recitation is not accurate. As the District Court noted, "[t]he first day" that Evans wore a mask violating the dress code, supervisors "told her that the mask was not permitted under the dress code policy … and that she had to remove the mask or leave." J.A. 1803. She refused to remove the mask and was sent home." J.A. 1802. In fact, in the interview cited by Plaintiffs, Evans

34

acknowledged that she had already been disciplined. J.A. 1803 ("On the first day she was sent home, Evans was interviewed outside of the Marlton Store and told the reporter that she was being sent home for wearing a Black Lives Matter mask."). Over the coming weeks, Evans accrued many more attendance and dress-code violations, and was warned "that future attendance violations would result in a final written warning." J.A. 1804. After that warning, Evans was given a final warning—as had been previewed—for her string of attendance violations (on July 25, 2020), and was fired for violating the store's attendance policy (on August 1, 2020). *Id.* After her termination, Evans notified Whole Foods that she had joined this litigation. J.A. 1805. As this shows, Evans (like Kinzer) was terminated after a long track record of discipline that predated her engaging in protected activity. *See* J.A. 1802–05.

Finally, Plaintiffs' temporal-proximity argument as to Michno is similarly flawed. Plaintiffs contend that "Michno was not disciplined until he began protesting Whole Foods' decision to force a coworker to remove a BLM poster from his work station," and "[h]e subsequently made Whole Foods aware that he was retaining legal counsel to pursue discrimination claims against the company, and he complained of a racially discriminatory work environment on a disciplinary form." Br. 51–52. But "Michno received his first corrective action for violating the dress code" on July 22, 2020, and the form on which he raised his concerns was provided because of that

corrective action. J.A. 1810. It was not until September 7, long after that first disci-pline, that Michno informed a supervisor that he was "retaining counsel to partici-pate in a lawsuit against Whole Foods." *Id*. As for Michno's comment that he was "motivated to wear" a BLM mask "after a Black coworker was told to take down a Black Lives Matter poster from his workstation," this does not amount to protected activity, and regardless, Michno does not contend that Whole Foods was even aware of this motivation before it disciplined him. J.A. 1809.

In short, Plaintiffs' temporal-proximity argument does not hold up. It is well-established that, "to establish that an adverse employment action was caused by an employee's protected activity, the employer's decision to act adversely to the em-ployee must postdate the protected activity." *Trainor*, 699 F.3d at 27. Here, the dis-cipline began before any protected activity occurred. And employers are not required to suspend previously planned employment actions "upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Breeden*, 532 U.S. at 272; *see also Munoz*, 671 F.3d at 56 (recognizing that causation cannot be established "when the adverse employment decision was contemplated but 'not yet definitively determined' before the protected activity took place"). Be-

cause Whole Foods began disciplining Plaintiffs for dress-code and attendance violations before Plaintiffs engaged in protected activity, Plaintiffs' temporal-proximity argument fails.

> **b.    Plaintiffs fail to show that Whole Foods' supposedly unusual termination procedures establish pretext.**

Searching for evidence of pretext, Plaintiffs contend that "[s]enior corporate leadership's unusual involvement in these terminations" creates "a genuine dispute … as to whether Whole Foods' rationale for terminating Plaintiffs was pretextual and impermissibly retaliatory." Br. 54. Plaintiffs are wrong again.

The District Court thoroughly evaluated this argument and exhaustively explained why it fails. In some cases, "[a]n employer's deviation from standard procedure or policies in taking an adverse employment action against a plaintiff may be relevant to the pretext inquiry." *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 96–97 (1st Cir. 2021). But here, "this alleged deviation is consistent with Whole Foods' explanation for its increased enforcement of the dress code policy." J.A. 1822. "While it may be true that senior executives were not typically tuned into day-to-day employee infractions, in the midst of the pandemic in the summer of 2020, corporate personnel were, understandably, very involved in any issues related to COVID-19, including the promulgation of store mask policies and any discipline involving mask-related policy violations." *Id*.

In fact, as this Court already recognized, "[i]t is logical that Whole Foods would have a different perspective on enforcing its dress code policy in the era of employee mask-wearing." *Frith*, 38 F.4th at 275. "On top of the novelty of the pandemic, the company was confronted with a coordinated display of dress code violations tied to what it perceived to be a political movement or controversial message—distinct from the typical, discrete employee infractions it had seen in the past." J.A. 1822; *see also Frith*, 38 F.4th at 275 ("[T]he timing of Whole Foods' decision to begin enforcing its existing policy may be explained by the 'obvious alternative explanation' that Whole Foods did not want to allow the mass expression of a controversial message by employees in their stores.").

The relevant summary-judgment evidence underscores the lack of any pretext. Whole Foods' corporate-level personnel, including in-house counsel, were involved in many termination decisions—not just those relating to Plaintiffs. During this time, Whole Foods' corporate-level personnel were involved in all termination decisions involving mask-related policy violations (beyond just BLM masks) and generally any issue related more broadly to Covid-19. J.A. 1821–22. For example, Vice President of Team Member Services Barbara Smith testified that she became involved in a dress-code violation "[i]f it was already an escalated process or related to

38

COVID or something along those lines," and that she expected to address these is-sues if they involved "[a]ny kind of protocol related to the pandemic and new and emerging policies." *Id*.

Plaintiffs suggest that emails among Whole Foods executives that described Kinzer and others as engaging in protests shows pretext, but this also does not with-stand scrutiny. Br. 53. As the District Court noted, the "substance of those emails largely reflects nothing more than personnel's oversight of the matter." J.A. 1822. That one Whole Foods executive described Kinzer as an "agitator" in a single email "is not enough to overcome the substantial evidence of Whole Foods' non-retaliatory motives." *Id*. After all, "when faced with employment decisions that lack a clear discriminatory motive, courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business de-cisions." *Rodríguez-Cardi*, 936 F.3d at 48–49 (citation omitted).

> ### c.     Plaintiffs' vague argument that they were treated differently than (unidentified) similarly situated co-workers also fails to show pretext.

Finally, Plaintiffs try to show pretext by arguing that they "have demonstrated that other employees who committed substantially similar actions (i.e., dress code violations) were not disciplined, further demonstrating that the purported dress code violations were not the only motivating factor behind their terminations." Br. 55. Once again, Plaintiffs misstate the record and are wrong on the law.

As the District Court noted in rejecting this argument, "even after substantial discovery, Plaintiffs have not identified any similarly situated employee who violated the dress code policy in a similar manner during this time and was treated differently than Plaintiffs." J.A. 1823. Thus, Plaintiffs' generic description of unidentified co-workers failed to "demonstrat[e]" (Br. 55) anything, let alone show pretext that would preclude summary judgment. In actuality, the record "demonstrates only that Whole Foods did not strenuously enforce the dress code policy until mid-2020, and that when it increased enforcement, it did so uniformly." J.A. 1823 (citing summary-judgment record and Plaintiffs' admissions in opposition briefing).

None of Plaintiffs' cited cases provide any support for their vague argument that they were treated differently than co-workers. *See Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 174 (1st Cir. 2003) (affirming summary judgment, explaining that the plaintiff "has not shown that any other similarly situated employee was treated differently"); Br. 55 (citing *Benoit*); *see also Travers v. Flight Servs. & Sys., Inc.*, 737 F.3d 144, 150 (1st Cir. 2013) (discussing the general summary-judgment standard in addressing a Fair Labor Standards Act claim); Br. 56 (quoting *Travers*).

\*     \*     \*

In sum, the undisputed evidence showed that summary judgment was required. Despite extensive discovery, there was "little evidence in the record to refute Whole Foods' legitimate business explanations for its strict enforcement of its dress

40

code policy" and Whole Foods' decision to terminate Plaintiffs for dress-code and attendance violations. J.A. 1824. And that discovery confirmed that there was "no significant probative evidence that Whole Foods' stated reasons for its actions concealed any discriminatory animus based on Plaintiffs' oppositional conduct." *Id*. Simply put, "a factfinder could not reasonably conclude that Whole Foods would not have disciplined and terminated Plaintiffs if it were not for their protected activities," so summary judgment was proper. *Id*.

## II.  The Court should not address the discovery issue, which is non-justiciable and, regardless, fails on the merits.

Plaintiffs continue to press their argument regarding the messages between Kinzer and co-workers that they produced in discovery. *See* Br. 57–64. Their position becomes more attenuated as the concern that they raise—the possible use of the text messages at a trial on their failed retaliation claims—shifts from the hypothetical into the implausible.

### A.  Plaintiffs' requested relief is unripe and non-justiciable, as it prematurely seeks to address issues at a trial that has not occurred.

Plaintiffs acknowledge that if this Court affirms the District Court's summary-judgment order, the discovery ruling they are challenging on appeal becomes irrelevant. Br. 64 ("*[A]ssuming this Court reverses* the grant of summary judgment for Whole Foods, the case will return to the District Court for trial," and "[t]he question of whether Plaintiffs must produce the disputed employee communications—which

41

have been produced here only on an "attorneys' eyes only basis"—*will* become an issue once again." (emphasis added)). Thus, if this Court affirms the summary judgment on the underlying claims, it should bypass this discovery issue entirely.

Even if the Court were to address this issue, moreover, Plaintiffs are not entitled to relief because the issue is moot in some respects and unripe in others. Plaintiffs' discovery argument is notably imprecise, and they seem unsure of what they are asking this Court to do. On the one hand, Plaintiffs purport to challenge the District Court's "discovery orders" requiring "Kinzer to produce certain group text messages that she had with coworkers providing case updates and discussing other organizing efforts at Whole Foods," contending that the messages are confidential. Br. 19, 61–63. But Plaintiffs produced these messages in early 2022 and this Court cannot unwind that production. *See* J.A. 160 (showing Plaintiffs seeking to "defer" production "in order to preserve … Kinzer's ability to pursue relief"). Additionally, those messages have been heavily redacted to protect the names of third parties, so there are no live confidentiality concerns to address. Plaintiffs seem to recognize as much, as they do not seek—and could not seek—any backwards-looking relief based on this existing production.[4]

---

[4] Whole Foods already made this point at length in seeking dismissal of the interlocutory appeal. *See, e.g.*, No. 22-1064, Resp. Br. 2, 16–17 (Oct. 21, 2022).

On the other hand, Plaintiffs look ahead and assume that, if the Court were to reverse the summary judgment order and revive the retaliation claims, this case will head to trial and disputes over the messages "*will* become an issue once again." *Id*. (emphasis added). But that is simply speculation and has nothing to do, in any event, with the production order purportedly on appeal. Even if the messages were to become contested in a trial setting, the District Court could easily address evidentiary issues in the first instance by employing traditional tools (e.g., an order in limine, sequestering witnesses, jury instructions, and so on) suited for that purpose. Indeed, to the extent that Plaintiffs are challenging future admissibility of the messages, the Court has obviously not yet made any admissibility rulings. *In re Basciano*, 542 F.3d 950, 958 (2d Cir. 2008) (declining to prematurely rule on trial evidence because "the defendant has not yet challenged the admissibility of this evidence, nor has the district court made any ruling in this regard"); *Benson v. Super. Ct. Dep't of Trial Ct. of Mass.*, 663 F.2d 355, 360 (1st Cir. 1981) (declining to issue premature evidentiary ruling, explaining that appellate courts are not "Friday afternoon quarterbacks").

Rather than await an actual trial-stage ruling or order to appeal, Plaintiffs—challenging discovery-stage orders—would have this Court guess at what the precise issues might be regarding these messages in trial setting and then fashion some sort of preemptive relief. This issue is obviously unripe, and addressing it now would hamstring the District Court's discretion and amount to a quintessential advisory

opinion. *See Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 825 (1st Cir. 2020) (noting that "[t]he ripeness inquiry is grounded in Article III's prohibition against advisory opinions" and the requirement's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" (quoting *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 8 (1st Cir. 2012))).

Plaintiffs effectively concede that their discovery appeal was "legally premature," but they attempt to rely on Rule 4(a)(2) to contend that "the issue is now properly before this Court." Br. 12. Both of Plaintiffs' cited authorities preclude this argument. *See id*. As the Supreme Court explained, "Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment *only when* a district court announces a decision that would be appealable if immediately followed by the entry of judgment." *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991) (emphasis added). That is not the case here—there was no basis for the District Court to enter judgment on the discovery order and Plaintiffs did not request (and could not have requested) entry of judgment, as they did before with the dismissal order. J.A. 14. And the District Court's "previously announced" order on the discovery issue is not "encapsulated by" the summary-judgment order—it is irrelevant to it. *Triangle Cayman Asset Co. v. LG & AC,*

*Corp.*, 52 F.4th 24, 31 (1st Cir. 2022).[5] Plaintiffs acknowledged as much below, asserting that "nothing in these communications would affect the viability of Whole Foods' anticipated motion for summary judgment." J.A. 144. Unsurprisingly, the District Court did not refer to the produced messages (or the discovery dispute surrounding their production) in granting summary judgment. *See* J.A. 1799–825.

Just as with Plaintiffs' previous attempts to force this issue on this Court, Plaintiffs' requested relief seeks to leapfrog the proper procedural process and is non-justiciable.

**B.      Regardless of these justiciability defects, Plaintiffs' request for novel relief fails on the merits and should be rejected.**

Although the Court should decline to address this issue for the reasons discussed above, the appeal from the discovery order fails just as readily on the merits. Plaintiffs' argument for recognizing a new NLRA-based privilege is convoluted, but at heart, it asks this Court to hold that the NLRB's discovery ruling from *In re Guess?, Inc.* controls civil-litigation issues in federal court. 339 NLRB 432 (2003). *See* Br. 64. This argument fails for a host of reasons.

---

[5] *See also Adapt of Phila. v. Phila. Hous. Auth.*, 433 F.3d 353, 364 (3d Cir. 2006) ("FRAP 4(a)(2), as construed in *FirsTier*, cannot save the present premature appeals, which have their roots in discovery orders."); *cf. Clausen v. Sea-3, Inc.*, 21 F.3d 1181, 1186 (1st Cir. 1994) (distinguishing between premature appeals of an amended judgment and "irremediably interlocutory" orders, such as a "discovery ruling," which cannot be cured).

To start, as the District Court recognized, "[i]t is well documented that federal courts have not recognized" Plaintiffs' asserted concerted-activity privilege as a blanket barrier to disclosure of relevant materials. J.A. 138. The District Court's conclusion was in line with all other federal courts to directly confront the question. *See, e.g.*, *Degrandis v. Children's Hosp. Bos.*, 203 F. Supp. 3d 193, 199 (D. Mass. 2016) (refusing to recognize privilege, emphasizing "that Congress has never acted to establish" the privilege, "no federal court has ever recognized it," and "several federal courts have expressly rejected such a privilege"); *Aldapa v. Fowler Packing Co. Inc.*, No. 115CV00420DADSAB, 2016 WL 8738176, at *7 (E.D. Cal. Mar. 18, 2016) (declining to adopt the *Guess?* framework, explaining that "the Court has the ability to regulate the discovery before it" and noting an absence of any authority that "requires a federal court to adhere to decisions by the NLRB … in ascertaining privileges for use in federal court actions").

Plaintiffs also gloss over the crucial fact that *Guess?* and the related cases that they cite all involve core union-organizing activity, which is absent here. *See* Br. 61. Plaintiffs deem this distinction "irrelevant" (Br. 19), but the case law (like the NLRA itself) repeatedly distinguishes union-organizing activity from other employment-related issues. *See Lucas v. Gold Standard Baking, Inc*., No. 13 CV 1524, 2017 WL 1436864, at *4 (N.D. Ill. Apr. 24, 2017) (distinguishing *Guess?* from applying to discovery in Title VII case, noting that "the NLRB has declared unlawful efforts to

46

discover through civil litigation names of employees who: signed union authorization cards, joined the union, attended union meetings, or were at the union hall," but "this is not such a case"); *Lapointe v. Target Corp.*, No. 16-CV-216 (GTS/CFH), 2017 WL 1397317, at *8 (N.D.N.Y. Mar. 6, 2017) (rejecting *Guess?*, describing it as addressing "union-related activities").

Plaintiffs do not cite a single case holding otherwise. Instead, Plaintiffs largely offer their intuitions about the NLRA's "purpose" and generalized discussions about the structure of the NLRA and the NLRB, citing decades-old decisions lacking any relevance to the current dispute. *See* Br. 58–59. When Plaintiffs actually cite cases involving the NLRA and discovery, they are equally uninformative. Most conspicuously, Plaintiffs ignore a crucial procedural distinction between this case and many of their cited authorities: Plaintiffs are asking the Court to adopt and apply administrative decisions from a government agency in an action originating in federal court, but many of Plaintiffs' cited authorities involve federal courts reviewing agency action (e.g., on a petition for review). *See* Br. 61. None of these cases adopt *Guess?* as a matter of federal civil procedure; they simply consider it in the context of reviewing agency action, including whether the agency properly applied its own precedent.

47

Plaintiffs do not cite a single case in which a federal court has "recognized" Plaintiffs' asserted privilege applying to communications between co-workers about the substance of the claims asserted in the litigation. Br. 61.[6]

Ultimately, Plaintiffs argument on the discovery issue is a meritless diversion. Plaintiffs misconstrue the background law and cite obviously inapposite decisions in urging this Court to be the first to recognize a privilege based on an NLRB ruling. But that ruling is "not binding on" this Court and "cannot be cited as authority for creating a new" privilege. *Degrandis,* 203 F. Supp. 3d at 199. Revealingly, Plaintiffs do not even explain how adopting the NLRB's *Guess?* framework would render the text messages off-limits in this case, underscoring the emptiness of their argument. The District Court did not abuse its discretion and the Court should reject Plaintiffs' unfounded attempt to create new law.

---

[6] Plaintiffs' procedural confusion also explains why their constant invocations of "deference" to the NLRB make no sense here. *See, e.g.*, Br. 63 (contending that the District Court "neglected to afford any deference to the NLRB's reasonable interpretation of the NLRA"). In reviewing agency action, the Court may defer to the NLRB's interpretation of the statute it administers. *See, e.g.*, *NLRB v. Me. Coast Reg'l Health Facilities*, 999 F.3d 1, 8 (1st Cir. 2021). But this case does not involve a review of NLRB action, and courts owe no deference to the NLRB on questions implicating distinct federal laws. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1629 (2018).

**C.** **The NLRB's amicus position merely duplicates Plaintiffs' flawed argument and fails for the same reasons.**

The NLRB's amicus brief repeats Plaintiffs' arguments and cites many of the same cases, leaving little more to be said in response. The NLRB acknowledges that it is asking this Court to create new law. NLRB Br. 1 (asking "this Court to provide the first appellate guidance" on this issue). The Court should decline that invitation, particularly given the serious procedural and merits issues surrounding Plaintiffs' argument. *See supra*, §§ II(A), (B).

In any event, the NLRB's requested relief is detached from the record in this case. For instance, the NLRB asks this Court "to remand this matter with instructions to apply the *Guess?* standard, and additionally or alternatively, craft a protective order that adequately protects the interests of the parties, the public, and those not before the court." Br. 33. But nowhere does the NLRB brief acknowledge that: (1) the parties agreed to a protective order in this case (*see* J.A. 14) and the messages were originally produced with confidentiality designations made under it, (2) the messages were produced with the names of third parties redacted (J.A. 1795), or (3) Kinzer already testified as to the names of many participants on these messages, waiving any confidentiality even if the messages had been privileged (J.A. 107). Given the stark mismatch between the NLRB's far-reaching request and the actual facts, the NLRB's request for this Court to make new law is easy to reject.

## CONCLUSION

For these reasons, the District Court's order granting summary judgment should be affirmed. If the Court were to reverse summary judgment and remand to the District Court, it should decline to address the discovery issue or, alternatively, deny the requested relief.

Dated: September 25, 2023

Respectfully submitted,

*s/ Michael L. Banks*

Michael L. Banks
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
T. 215.963.5387

Terry D. Johnson
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey 08540
T. 609.919.6689

Andrew M. Buttaro
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, Massachusetts 02110
T. 617.341.7743

*Counsel for Whole Foods Market, Inc.*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,639 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word for Microsoft 365 MSO in Times New Roman, a proportionally spaced typeface.

Dated: September 25, 2023       *s/ Michael L. Banks*
                            Michael L. Banks

                            *Counsel for Whole Foods Market, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of Appellee on this date with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the Appellate Electronic Filing system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished on the following counsel by the Appellate Electronic Filing system:

> Shannon Liss-Riordan
> Matthew Carrieri
> Lichten & Liss-Riordan, P.C.
> 729 Boylston Street, Suite 2000
> Boston, MA 02116
> T. 617.994.5800
> sliss@llrlaw.com
> mcarrieri@llrlaw.com

Dated: September 25, 2023               *s/ Michael L. Banks*
                                        Michael L. Banks

                                        *Counsel for Whole Foods Market, Inc.*