# LICHTEN & LISS-RIORDAN, P.C.

### ATTORNEYS AT LAW

HAROLD L. LICHTEN˟
SHANNON LISS-RIORDAN˟△◇
SARAH SCHALMAN-BERGEN∎
MATTHEW W. THOMSON˟
ADELAIDE H. PAGANO˟
THOMAS P. FOWLER˟◇
BRADLEY MANEWITH●
KRYSTEN CONNON˄∎

OLENA SAVYTSKA˟
ZACHARY RUBIN˟◇˄●
MATTHEW CARRIERI˟
SAMUEL DAVIS˟▫
JACK BARTHOLET˟
BENJAMIN J. WEBER˟ OF COUNSEL

729 BOYLSTON STREET, SUITE 2000
BOSTON, MASSACHUSETTS 02116
—————
TELEPHONE 617-994-5800
FACSIMILE 617-994-5801

WWW.LLRLAW.COM

—————————
˟ ADMITTED IN MASSACHUSETTS
△ ADMITTED IN CALIFORNIA
◇ ADMITTED IN NEW YORK
∎ ADMITTED IN PENNSYLVANIA
● ADMITTED IN ILLINOIS
˄ ADMITTED IN NEW JERSEY
♦ ADMITTED IN CONNECTICUT
▫ ADMITTED IN NORTH CAROLINA

April 11, 2024

**VIA: CM/ECF FILING**

Maria R. Hamilton, Clerk of Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re:     <u>Kinzer, et al. v. Whole Foods Market, Inc., et al.</u>
        First Cir. Appeal Nos. 23-1100; 22-1064

Dear Ms. Hamilton:

Pursuant to FRAP 28(j), Plaintiffs submit a copy of a decision issued today by Administrative Law Judge ("ALJ") Susannah Merritt of the NLRB in <u>Whole Foods Market, Inc. v. Savannah Kinzer</u>, Case 01-CA-288032. That case arose from a complaint issued by the NLRB General Counsel alleging that Whole Foods violated Section 8(a)(1) of the Act by seeking the very protected employee communications at issue in this appeal.

In the decision, ALJ Merritt agreed with many arguments raised by Plaintiffs in this appeal. She began by rejecting Whole Foods' argument (which it has also made in this appeal) that the framework set out in <u>Guess?, Inc.</u>, 339 NLRB 432, 434 (2003), is not applicable to the communications at issue. <u>See</u> Decision at 10-12. She held that the <u>Guess?</u> framework applies to cases involving discovery requests in federal court, and that it governs not just "core" Section 7 activity, but *all* protected concerted activity, including employee communications discussing ongoing legal action. <u>Id.</u>; <u>see also</u> Opening Br. at 60-63; Reply Br. at 23-26.

ALJ Merritt then applied the <u>Guess?</u> framework to the employee communications and found that Whole Foods' interest in seeking their discovery did not outweigh Ms. Kinzer's interest in protecting the identities and activities of her coworkers. <u>See</u> Decision at 13-15. She further held that Whole Foods' efforts to obtain those communications violated the Act, as did its opposition to Plaintiffs' requests to redact the names of those involved, to designate the

# LICHTEN & LISS-RIORDAN, P.C.

communications "Highly Confidential", and to maintain them under seal. <u>See</u> Decision at 16-21. The ALJ thus ordered Whole Foods to cease and desist from seeking discovery of the protected communications, and objecting to redactions and/or confidentiality designations of communications that have already been produced. <u>See</u> Decision at 25.

As Plaintiffs argued in their briefing in this appeal, the NLRB's interpretation of the Act is entitled to judicial deference. <u>See</u> Opening Br. at 59-60. Like the ALJ, this Court should apply the <u>Guess?</u> framework to the same communications at issue in this appeal, and conclude that Whole Foods' efforts to obtain these documents violate the Act.

Respectfully submitted,

*s/ Shannon Liss-Riordan* \_\_\_\_\_
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
*Counsel for Plaintiffs-Appellants*

cc: All counsel of record (via ECF)

# Exhibit A

JD-23-24
Cambridge, MA

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
## DIVISION OF JUDGES

WHOLE FOODS MARKET, INC.
        Respondent

    and                                     Case 01-CA-288032

SAVANNAH KINZER, an Individual
        Charging Party

*Eric Duryea, Esq.,*
    for the General Counsel.
*David Broderdorf, Esq.*,
*Jason Ranjo, Esq.,* and
*Andrew Savage, Esq.,*
    for the Respondent.
*Shannon Liss-Riordan, Esq.* and
*Matthew Carrieri, Esq.,*
    for the Charging Party.

## DECISION

### STATEMENT OF THE CASE

**SUSANNAH MERRITT**, Administrative Law Judge. This case was tried in Boston, Massachusetts, on December 5, 2023. At the hearing, the parties presented their opening statements, waived their right to an evidentiary hearing, and submitted this case to me as a stipulated record.[1]

---

[1] On December 8, 2023, the General Counsel filed a Motion for a Protective Order and to Seal Portions of Certain Exhibits. Respondent did not object to the General Counsel's Motion, and I grant the Motion. The protective order sets limits on how documents that parties marked or designated as confidential may be used before, during and after the trial proceedings in this case, and also limits the disclosure of those documents to certain specified individuals. To ensure that confidential documents are not improperly disclosed to the public, I hereby order that the protective order in this case shall continue in full force and effect. See *National Football League*, 309 NLRB 78, 88 (1992).

JD-23-24

On August 2, 2023, the General Counsel, through the Regional Director for Region 1 of the National Labor Relations Board (the Board), issued a complaint against Whole Foods Market, Inc. (Respondent or Whole Foods).[2]  The complaint was premised upon an unfair labor practice charge filed by Samantha Kinzer (Kinzer) on December 21, 2021, and amended on July 28, 2023.  On August 15, 2023, the Respondent filed an answer to the complaint denying the substantive allegations and asserting numerous affirmative defenses.

The General Counsel alleges that Respondent violated Section 8(a)(1) of the National Labor Relations Act (the Act) by seeking a Board affidavit as well as documents and communications, in the form of a group chat, which would reveal the identities of individuals engaged in Section 7 activities during the course of a Title VII lawsuit filed in the United States District Court in the District of Massachusetts (Title VII lawsuit).  I find partial merit to the General Counsel's complaint as set forth in greater detail below.

On January 16, 2024, posthearing briefs were filed by the parties and have been carefully considered.  Accordingly, based upon the entire record, including the posthearing briefs and stipulated facts, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I.    Jurisdiction

Respondent, a corporation with its headquarters located at 550 Bowie Street in Austin, Texas, has been engaged in the business of operating retail grocery stores at locations throughout the United States, including a store located at 340 River Street in Cambridge, Massachusetts. The Respondent annually derives gross revenues from its business operations in excess of $500,000, and purchases and receives at its River Street, Cambridge store goods valued in excess of $5,000 directly from points outside the Commonwealth of Massachusetts. Respondent admits and I find that it is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

Based on the foregoing, I find this dispute affects commerce and that the Board has jurisdiction of this case, pursuant to Section 10(a) of the Act.

### II.    The Alleged Unfair Labor Practices

In her complaint the General Counsel alleges that Respondent violated Section 8(a)(1) of the Act by: (1) on about May 16, 2021,[3] requesting that Charging Party Savannah Kinzer (Kinzer) produce documents relating to communications, including messages posted on any social media site, between Kinzer and other employees related to the Title VII lawsuit; (2) on

---

[2] On December 5, 2023, at hearing the General Counsel moved to amend its complaint to correct minor typographical errors and I granted the General Counsel's unopposed motion.

[3] All dates hereinafter are in 2021, unless otherwise specified.

JD-23-24

about August 25, asking Kinzer at her deposition to disclose the content as well as the names of all persons, including current and former employees of Respondent, who participated in a group chat on Facebook Messenger (the Group Chat); (3) on about September 27, requesting from Kinzer copies of the Group Chat; (4) on about November 11, requesting that the Court compel Plaintiffs to produce
5  Plaintiff Christopher Michno's Board affidavit; (5) on about December 1, requesting that the Court compel Plaintiffs to produce Michno's affidavit as well as the Group Chat; (6) on January 21, 2022, refusing to consent to the Plaintiffs' request to redact the names of current and former employees on the Group Chat; (7) on about April 4, 2022, opposing Plaintiffs' request to the Court which sought the permanent sealing of excerpts from the Group Chat; and (8) on about May 5, 2022,
10  opposing Plaintiffs' request to the Court that sought to maintain a highly confidential designation for, and redactions to, the Group Chat.

Respondent contends that the information requests and objections to redactions and confidentiality designations were lawful attempts to seek information relevant to its defense in
15  the Title VII lawsuit.

**Overview[4]**

Prior to filing the charge in the instant case, Kinzer filed a Board charge on July 15,
20  2020, alleging that Respondent violated Section 8(a)(1) of the Act by prohibiting employees from wearing Black Lives Matter (BLM) face masks in the workplace and disciplining employees who did so. A consolidated complaint covering these allegations, among others, *Whole Foods Market, Inc.*, 01–CA–263079 et al., issued on December 3, 2021, and the hearing opened on March 1, 2022. On December 20, 2023, Administrative Law Judge Ariel Sotolongo
25  issued his decision dismissing some of the allegations finding, inter alia, that wearing BLM masks did not constitute protected concerted activity.

On July 20, 2020, Kinzer and 13 other current and former employees of Respondent initiated *Kinzer, et al. v. Whole Foods Market, Inc.*, 20–cv–11358, by filing a class-action
30  complaint against Respondent in the United States District Court for the District of Massachusetts (Title VII lawsuit).[5]  (Jt. Exh. 1.) The complaint alleged, among other things, that Respondent violated Title VII by discriminating and retaliating against employees for wearing BLM masks and other attire. (Jt. Exh. 1 at 2.)  On about March 1, following the Court's partial dismissal of the claims in the complaint, the complaint was amended to include only Title VII
35  retaliation claims involving three Plaintiffs: Kinzer, Christopher Michno, and Haley Evans (collectively the Plaintiffs).  (Jt. Exh. 3.) Each Plaintiff is a former employee of Respondent.

On May 16, Respondent directed a request for documents to Kinzer, which sought, among other things, documents relating to communications between Kinzer and any employee of

---

[4]  For clarity this section consists of a brief overview of the timeline relevant to the allegations.  A more specific description of each discovery allegation is set forth in the analysis section.

[5]  Abbreviations used in this decision are as follows: "Tr." for transcript; "Jt. Exh. __" for Joint Exhibit; "GC Exh. __" for General Counsel's Exhibit; "R. Exh. ___" for Respondent's Exhibit; "GC Br. at __" for General Counsel's posthearing brief; and "R. Br. at __" for Respondent's posthearing brief.

JD-23-24

Respondent concerning allegations in the amended complaint, and all messages that Kinzer posted on any social media site concerning Respondent, the subject matter of the Title VII lawsuit, the damages sought in the Title VII lawsuit, the allegations in the amended complaint, or the defenses asserted by Respondent.[6]

5

On July 29, the Court in the Title VII litigation entered a stipulated protective order (the Protective Order) under which Respondent and Plaintiffs agreed that either party could designate discovery materials as confidential and restrict their disclosure.  (Jt. Exh. 5.)  Per the language of the Protective Order, disclosure of "Confidential" discovery materials is limited to a specified
10 group of individuals, including: the parties, their counsel, court reporters, vendors used by the parties during the litigation process, consultants and experts retained by the parties, the authors of the Discovery Materials, witnesses at trial or in depositions, and other individuals by consent of the parties.  (Jt. Exh. 5 at par. 6(b).) Discovery material designated as "Highly Confidential" could be disclosed to a narrower subset of individuals that excludes the parties themselves and
15 their in-house counsel. (Jt. Exh. 5 at par. 6(c).)  Pursuant to the language in the Protective Order, any party or nonparty could challenge a designation of confidentiality. (Jt. Exh. 5 at par 8.) After an objection is made, the parties have an obligation to meet and confer to try to reach agreement with regard to whether discovery materials are appropriately deemed "Confidential" or "Highly Confidential."  If the parties are unable to reach agreement, the designating party must file a
20 motion to retain the designation with the Court.  (Jt. Exh. 5 at par. 8.)

On August 25, Respondent took Kinzer's deposition in the Title VII lawsuit. During the deposition, Kinzer referred to a group chat (the Group Chat) in which she would update current and former employees of Respondent about developments in the Title VII lawsuit.[7] (Jt. Exh. 6.)
25 Respondent's counsel asked her to disclose all of the names of the current and former employees who were on the Group as well as about its content.[8]

On September 8, Respondent's counsel took the deposition of Plaintiff Christopher Michno (Michno). During his deposition, Michno testified that he had reviewed an affidavit
30 taken by a Board agent in October 2020, in preparation for his deposition. (R. Exh. 2 at 16.)

On September 27, in a letter, Respondent requested that Plaintiffs provide, inter alia, "[a]ll non-privileged communications relating to this lawsuit that Savannah Kinzer exchanged with third parties who are not a party to this lawsuit, including, but not limited to, group
35 messages in which she relayed privileged information to those third parties, thereby waiving any privilege that may have attached" as well as "[a] copy of any written statements signed by Christopher Michno, including the affidavit he testified to reviewing and signing prior to his deposition."[9] (Jt. Exh. 7.)  The Plaintiffs objected to providing the Group Chat and the Michno affidavit stating the materials were privileged and confidential. (Jt. Exh. 8.)

40

---

[6]  Complaint par. 6(a).
[7]  The Group Chat was on Facebook Messenger.
[8]  Complaint par. 6(b).
[9]  Complaint par. 6(c).

4

JD-23-24

On November 11, Respondent wrote a letter to the Court in advance of a scheduled telephonic conference opining that the Plaintiffs should produce Michno's Board affidavit as well as a privilege log for the Group Chat.[10] (Jt. Exh. 9.)

5      On November 12, the Court ordered Plaintiffs to provide Respondent with the Michno Board affidavit and a privilege log describing the basis for withholding the Group Chat. (Jt. Exh. 10 and 11.)

10      On December 1, Respondent sent a letter to the Court regarding Plaintiffs' Group Chat privilege assertion and asking the Court to compel the production of the Michno Board affidavit.[11] (Jt. Exh. 12.)

On December 17, the Court issued an order ordering Plaintiffs to produce the Group Chat as well as the Michno affidavit by 5 p.m. on December 22. (Jt. Exh. 13.)

15

On December 21, the Plaintiffs agreed to provide the Michno affidavit, but requested an extension of time to produce the Group Chat as Kinzer had filed a charge with the Board (the initial charge in this case), alleging that Respondent interfered with Kinzer and her coworkers'
20      exercise of their protected concerted activity "by requesting and then aggressively pursuing production of" the Group Chat.[12] (GC Exh. 1(a).)  In the letter, Plaintiffs requested that the Court defer requiring that the Group Chat be produced pending the processing of the Board charge.  (Jt. Exh. 14.)

On January 12, 2022, the Court issued an order denying Plaintiff's request to defer the
25      production of the Group Chat and ordered Plaintiffs to produce it by January 21, 2022.  (Jt. Exh. 18.)

On January 20, 2022, the Plaintiffs emailed Respondent asking if it would consent to a production of the Group Chat that was designated "attorneys' eyes only" and contained
30      redactions to protect employees' identities.  (Jt. Exh. 19 at 4.)

On January 21, 2022, Respondent rejected Plaintiffs' request to provide the Group Chat with redactions. (Jt. Exh. 19 at 3–4.)[13]

---

[10] Complaint par. 6(d).

[11] Complaint par. 6(e).

[12] The charge sets forth in pertinent part:

Whole Foods . . . aggressively pursued production of a specific Facebook group chat that includes Whole Foods workers and Ms. Kinzer (and which counsel is copied on) that related to these workers' organizing efforts. . .. Ms. Kinzer hereby alleges that Whole Foods has violated Section 8(a)(1) of the Act, by requesting and then aggressively pursuing production of these communications, thereby interfering with Ms. Kinzer's and her co-workers' exercise of their Section 7 right to engage in protected concerted activity for mutual aid and protection."  (GC Exh. 1(a).)

[13] Complaint par. 6(f).

On January 24, 2022, the Plaintiffs produced a portion[14] of the Group Chat to Respondent, designating its contents as "Highly Confidential—Attorneys' Eyes Only," and redacting all employee names except the names of the Plaintiffs and their attorney. (Jt. Exh. 19 at 2.) At some point thereafter the Plaintiffs provided the rest of the Group Chat.

On February 7, 2022, Respondent asked Plaintiffs for their consent to allow Whole Foods' in-house counsel to review documents they designated as "Highly Confidential." Plaintiffs consented on February 15, 2022. (Jt. Exh. 27 at 6.)

Sometime before March 18, 2022, Respondent filed a Motion for Summary Judgment with the Court and Plaintiffs responded with a brief in opposition to Respondent's motion.

On March 18, 2022, Respondent filed a Reply Memorandum in Further Support of its Motion for Summary Judgment and attached as exhibits two excerpts from the Group Chat[15] which were provisionally filed under seal pursuant to the Protective Order. (Jt. Exh. 25.)

On March 22, 2022, the Plaintiffs moved to permanently seal the Group Chat excerpts attached to Respondent's motion pursuant to the procedures set forth in the Protective Order. (Jt. Exh. 26.)

On April 4, 2022, Respondent filed its Opposition to Plaintiffs' Motion to Seal.[16] (Jt. Exh. 27.)

On April 21, 2022, Plaintiffs filed a motion to maintain the "Highly Confidential" designation and redactions applied to the Group Chat. (Jt. Exh. 28.)

On May 5, 2022, Respondent filed its opposition to the redactions as well as the "Highly Confidential" designation for the Group Chat.[17] (Jt. Exh 29 at 12.)

On June 10, 2022, the Court issued an order in which it allowed for the continued redaction of third-party names but denied the Plaintiffs' motion to permanently seal and to maintain the "Highly Confidential" designation on the Group Chat. (Jt. Exh. 30.)

On July 27, 2023, Kinzer filed an amended charge with the Board alleging that Respondent "violated Section 8(a)(1) of the Act by 1) issuing an overly broad request for the production of documents; 2) asking the Charging Party during a deposition for the names of all employees on a Facebook Messenger group chat discussing the Title VII litigation and for the content of their communications; 3) requesting a copy of the group chat; 4) pursuing production of documents labeled in a privilege log as confidential employee communications about organizing; 5) refusing to agree to redactions to the group chat; 6) opposing a motion to seal portions of the group chat; and 7) objecting to the production of the group chat under a "Highly

---

[14] It appears that the Plaintiffs turned over about 72 pages of the Group Chat at this time. (Jt. Exh. 19 at 1.)

[15] The attached excerpts consisted of a total of four pages of the Group Chat.

[16] Complaint par. 6(g).

[17] Complaint par. 6(h).

JD-23-24

Confidential-Attorneys' Eyes Only" designation; and 8) by seeking the Board affidavit of one of the Plaintiffs during discovery." (GC Exh. 1(c).)

5    On August 2, 2023, the Regional Director for Region 1 issued a complaint and notice of hearing alleging multiple violations of Section 8(a)(1), mirroring all of the allegations listed in the amended charge above, filed on July 27, 2023.  (GC Exh. 1(e).)

III.    JURISDICTION

10    Before addressing the complaint's substantive allegations, I must address a preliminary legal issue that Respondent has raised of whether the Board has jurisdiction to hear this case.[18] The Respondent argues that the Federal Rules of Civil Procedure (FRCP) give the district court sole authority for determining what discovery is or is not permissible in the Title VII litigation here. (R. Br. at 40.) But the legal question in this case is not what discovery requests are
15    permissible under the FRCP, but instead whether specific discovery requests made by Respondent in the Title VII litigation constitute independent unfair labor practices.  Jurisdiction over that question rests solely with the Board.  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938); *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 829–830 (1984). Furthermore, if any violations of the Act are found in the unfair labor practice proceeding, the remedy would be
20    to order the Respondent to cease its unlawful activity, not to order the district court to quash the discovery requests.

A.    **Respondent contends that Most of the Allegations in the Complaint were Untimely filed and therefore Violate Section 10(b) of the Act**

25

Respondent also contends that the majority of the complaint's allegations are barred by Section 10(b) of the Act.  As set forth above, Kinzer filed the initial charge in this case on December 21, 2021. In that charge Kinzer alleged that Respondent: "violated Section 8(a)(1) of the Act, by requesting and then aggressively pursuing production of [the Facebook group chat],
30    thereby interfering with Ms. Kinzer's and her co-workers' exercise of their Section 7 right to engage in protected concerted activity for mutual aid and protection."  (GC Exh. 1(a).)

About a year and a half later, on July 27, 2023, Kinzer filed an amended charge in this case in which she alleged that Respondent "violated Section 8(a)(1) of the Act by 1) issuing an
35    overly broad request for the production of documents; 2) asking the Charging Party during a deposition for the names of all employees on a Facebook Messenger group chat discussing the Title VII litigation and for the content of their communications; 3) requesting a copy of the group chat; 4) pursuing production of documents labeled in a privilege log as confidential employee communications about organizing; 5) refusing to agree to redactions to the group chat; 6)

---

[18] On October 24, 2023, Respondent filed a Motion to Dismiss the complaint with the Board. (GC Exh. 1(h).)  The Board denied Respondent's Motion on January 3, 2024.

JD-23-24

opposing a motion to seal portions of the group chat; and 7) objecting to the production of the group chat under a "Highly Confidential-Attorneys' Eyes Only" designation; and 8) by seeking the Board affidavit of one of the Plaintiffs during discovery." (GC Exh. 1(c).)

5    On August 2, 2023, The Regional Director for Region 1 issued a complaint and notice of hearing alleging multiple violations of Section 8(a)(1), mirroring all of the allegations listed in the amended charge above.  (GC Exh. 1(e).)

Respondent alleges that the following allegations in the amended complaint are beyond
10    the statute of limitations and are not closely related to the timely filed charge: (1) the allegation regarding Respondent's May 16, request for communications between Kinzer and other employees regarding the lawsuit (complaint par. 6(a)); (2) the allegations regarding Respondent's November 11 and December 1 attempts to seek Michno's affidavit (complaint par. 6(d) and (e)); and (3) the allegations regarding Respondent's communications or filings to the
15    district court regarding the Group Chat. (complaint par. 6(f)-(h).)

Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." The Board has long held however that allegations in an untimely filed charge may be considered
20    timely if they are legally and factually "closely related" to a timely filed charge.  *Redd-I, Inc.*, 290 NLRB 1115 (1988), as clarified by *Carney Hospital*, 350 NLRB 627 (2007). To determine if an otherwise untimely allegation is closely related to the timely charge, the Board: (1) considers whether the otherwise untimely allegations involve the same legal theory as the allegations in the timely charge; (2) considers whether the otherwise untimely allegations arise from the same
25    factual situation or sequence of events as the allegations in the timely charge (i.e., the allegations involve similar conduct, usually during the same time period, and with a similar object); and (3) may look at whether a respondent would raise the same or similar defenses to both the otherwise untimely and timely allegations. *Redd-I, Inc*., 290 NLRB at 118. Respondent has the burden of proving untimeliness. *Midwest Terminals of Toledo*, 365 NLRB No. 158, slip op. at 15–16
30    (2017), enfd. 783 Fed.Appx. 1 (D.C. Cir. 2019); *Phillips 66 Co. & Wayne Michael Terrio*, 373 NLRB No. 1 (2023).

### 1.  The May 16 Allegation

35    It is undisputed that Respondent's May 16, request for documents relating to communications between Kinzer and any employee of Respondent, including on social media, concerning the allegations in the Title VII lawsuit (complaint par. 6(a)) took place more than six months prior to the filing of the initial charge in this case on December 21. However, Respondent continued to request that the Plaintiffs produce responsive documents, namely the
40    Group Chat, during the 6-month 10(b) period which were included in the timely filed charge, including on September 27, (complaint par. 6(c)), and December 1, (complaint par. 6(e)).  Thus,

8

JD-23-24

it is clear that these allegations are closely related as they involve the same legal theory and the same factual situation and sequence of events.  First, the legal theory for both the timely and untimely allegations is that Respondent violated Section 8(a)(1) by unlawfully requesting information that would reveal the identities and activities of employees who were engaging in protected concerted activity.  Second, the subject of the request—the Group Chat—is the same for both the timely and untimely allegations. Finally, as borne out in Respondent's posthearing brief, Respondent uses the same defenses for the timely and untimely filed charges.

5

Respondent uses a variety of defenses in this case.  First, stating that the Board does not have jurisdiction of this case. Second, that Respondent's requests are protected under the First Amendment's Petition Clause. Third, that under the analysis set forth in *Guess?*[19] the Respondent's need for the unredacted documents outweighs the employees' privacy right.  In its posthearing brief, Respondent uses all of these defenses for all of the allegations in the complaint.  Given that the timely and untimely allegations in this case involve a continuing document request for the same Group Chat, I find that the allegations in paragraph 6(a) of the complaint are closely related to the timely filed charge and therefore are not barred as untimely.

10

15

### 2.  2022 Allegations Regarding Confidentiality and Redactions

Similarly, it is undisputed that allegations 6(f)–(h) of the complaint alleging that on January 1, 2022, April 4, 2022, and May 5, 2022, the Respondent violated the Act by opposing Plaintiff's request to redact nonparty names, permanently seal, and label as "Highly Confidential" the Group Chat, took place more than 6 months before those allegations were added to the amended charge filed on July 27, 2023.  The General Counsel contends that allegations set forth in the initial charge are closely related to these allegations as they involve the same legal theory and subject matter, and Respondent's legal defense encompasses the same legal arguments. I agree with the General Counsel that these cases are closely related under the *Redd-I* analysis.

20

25

First, the allegations here involve the same legal theory as the timely filed charges–that Respondent violated Section 8(a)(1) by unlawfully seeking information that would reveal the identities and activities of employees who were engaging in protected concerted activity. Second, the allegations involve the same factual setting as they involve the same parties (Kinzer and Respondent), and object (the same group chat), in the same setting (Title VII litigation discovery proceedings).  Third, as spelled out above, Respondent used the same defenses for all of the allegations in the complaint.  In light of the above, I find that the allegations in Section 6(f) through 6(h) are closely related to the timely filed charge and therefore are not barred as untimely.

30

35

---

[19] 339 NLRB 432 (2003).

9

### 3. Michno Affidavit Allegations

Finally, Respondent contends that the General Counsel's allegations regarding the
5   Michno affidavit are untimely as those allegations were not added to the amended charge until
July 27, 2023, more than a year and a half after Respondent had requested that the affidavit be
produced pursuant to Title VII discovery on both November 11, and December 1. I find that the
Michno affidavit requests are not untimely as they are closely related to the initial charge that
was filed in this case on December 21.  First, the allegations here involve the same legal theory
10   as the timely filed charges–that Respondent violated Section 8(a)(1) by making unlawfully
overly broad discovery requests.  Second, the allegations involve similar conduct (overly broad
discovery requests), between the same parties (Respondent and Plaintiffs in the Title VII
litigation), during the same period of time (on both November 11 and December 1, Respondent
made requests for the production of the Group Chat and the Michno affidavit in the same
15   correspondence).[20]  Finally, as spelled out above, Respondent used the same defenses for all of
the allegations in the complaint.  Thus, I find that the allegations regarding Respondent's demand
that Plaintiffs turn over Michno's Board affidavit are closely related to the timely filed charge
and therefore cannot be barred by Section 10(b).

20           IV.    Legal Standard

In *Guess?, Inc.*, 339 NLRB 432, 434 (2003), the Board set forth its three-part test for
determining whether a respondent's discovery requests in a separate proceeding were lawful.
First, the request must be relevant.  Relevance is determined by the law of the forum in which the
25   civil suit is pending. See *Maritz Communications Co.*, 274 NLRB 200 (1985). Second, if the
request is relevant, it must not have an illegal objective. Third, if the request is relevant and does
not have an illegal objective, the employer's interest in obtaining the information must outweigh
the employees' confidentiality interests under Section 7 of the Act.

30           Respondent contends that the *Guess?* framework is not applicable to this case citing
multiple theories.  First, Respondent contends that its discovery requests are constitutionally
protected by the First Amendment's Petition Clause under Supreme Court precedent in *Bill
Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983), and *BE&K Construction Co. v. NLRB*,

---

[20] The cases cited by Respondent are inapposite as they involve cases where the alleged
misconduct did not arise out of the same set of facts and occurred months apart from one
another.  See *Carpenters Local 720*, 274 NLRB 1506, 1507 (1985) (separate and distinct acts
conducted 2 months apart for different reasons not closely related); *Regency Grande Nursing &
Rehab. Ctr.*, 347 NLRB 1143, 1144 (2006) (finding allegation did not arise from same set of
facts as charge where alleged conduct occurred "almost 3 months" apart from conduct in charge
and did not arise from the same overall scheme); *Allied Indus. Workers of Am. Local 594
(Warren Molded Plastics, Inc.*), 227 NLRB 1541, 1541 (1977) (finding 8(b)(1)(A) charge
involved two separate and distinct actions which took place months apart). Here, Respondents'
action arose under the same sequence of events and took place during the same time period.  In
fact, Respondent demanded production of the Group Chat and the Michno affidavit in the same
letters on November 11, as well as December 1.

536 U.S. 516, 525 (2002), relying on the *Noerr-Pennington* doctrine.[21] However, it is well established that the "Supreme Court 'has extended *Noerr-Pennington* immunity into labor law only to protect direct petitioning, i.e., lawsuits,' but not to protect indirect petitioning," such as discovery requests. *United Nurses Associations of California v. Lab. Rels. Bd.*, 871 F.3d 767, 788 (9th Cir. 2017) (citing *Venetian Casino Resort, L.L. C v. NLRB*, 484 F.3d 601, 612 (D.C. Cir. 2007)); See also, *Santa Barbara News-Press,* 358 NLRB 1539, 1545 (2012) incorporated by reference in 361 NLRB 903 (2014). It is clear that this case does not involve direct petitioning, but rather incidental conduct in the form of discovery requests.[22] As such, the discovery requests do not fall within the protection of the Petition Clause in the labor law context.

Second, the Respondent contends that *Guess?* does not apply in this case because it has generally been applied in state court proceedings and has yet to be applied to a Federal court proceeding. Although, not precedential, the Board has signaled its willingness to apply the *Guess?* framework to several cases involving Federal court litigation.[23] Moreover, the Board in *Pain Relief Centers*, 371 NLRB No. 143, slip op. at 2 (2022), held that the *Guess?* framework is to assess whether discovery requests "in a separate proceeding" violate the Act. There is nothing in the language of *Guess?* or its progeny that restricts it from being applied to Federal discovery proceedings and Respondent offers no logical reason to restrict it.

Third, the Respondent also contends that *Guess?* does not apply because the protections sought are not for what it refers to as "core" Section 7 activity. (R. Br. at 27.) Respondent contends that because the communications at issue did not involve *union* activity, but rather involved activity of "disputed" protected status, the *Guess?* framework does not apply. However, the Board is mandated to safeguard *all* protected concerted activity under Section 7, whether the activity involves union activity or just concerted activity for mutual aid and protection of employees. Moreover, it is well settled that employees are engaged in protected concerted activity when filing a lawsuit against an employer with coworkers[24] and when

---

[21] Originating as a shield against antitrust liability, the *Noerr-Pennington* doctrine protects otherwise illegal activity that nevertheless constitutes a genuine "'attempt to persuade the legislature or the executive to take particular action.'" *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56 (1993) (quoting *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. at 136).

[22] See *Venetian Casino Resort, LLC*, 357 NLRB 1725, 1727 (2011) ("[f]ederal courts generally have limited *Noerr-Pennington* immunity to petitions that seek the passage of a law or rule, or a significant policy decision regarding enforcement"); *Santa Barbara News-Press,* 358 NLRB 1539, 1541 (2012), incorporated by reference in 361 NLRB 903 (2014).

[23] In *Century Restaurant & Buffet, Inc.*, 358 NLRB 143 (2012), and *Chinese Daily News*, 353 NLRB 613 (2008), the Board found 8(a)(1) violations related to discovery in Federal lawsuits under the *Guess?* framework. However, those decisions were issued by Boards that were not validly constituted, either due to recess appointments or having only 2 members. The Board currently has two cases on exceptions where the administrative law judges found a *Guess?* violation based on discovery issues in Federal courts. See *Chemtrade West US, LLC*, 2022 WL 17080870 and *Starbucks Corp.*, 2023 WL 3478197.

[24] See *Host Int'l, Inc.*, 290 NLRB 442, 443 (1988) (multiple plaintiff lawsuit concerning working conditions was protected concerted activity); *Harco Trucking, LLC*, 344 NLRB 478, 479 (2005) (filing a civil action by a group of employees constitutes protected concerted

JD-23-24

discussing a collective lawsuit concerning working conditions with coworkers.[25] Here it is undisputed that the Group Chat requested by Respondent contained employee discussions regarding the Title VII lawsuit, and therefore certainly falls under the definition of protected concerted activity.[26]

In light of the above, Respondent failed to provide any viable support for its assertion that *Guess?* is not the appropriate legal framework for this case and I find that it is controlling precedent and the legal framework to evaluate the issues before me.[27]

### V.  *Guess?* **Analysis of the Allegations**

### 1.  **Respondent's May 16 Request for Documents.[28]**

#### Facts

On May 16, during the course of the Title VII lawsuit, Respondent issued its first request for the production of documents from Kinzer. The document request included, inter alia, the following requests:

9.  All documents that reflect, refer to, or relate to your communications, correspondence, emails, meetings, or discussions with any officer, agent or employee of Whole Foods.

---

activity); *Le Madri Restaurant*, 331 NLRB 269, 275 (2000) (the filing of a civil action by employees is protected activity unless done with malice or in bad faith").

[25] See *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 491–492 (1978) (NLRA protects employees' right to freely communicate with their coworkers and others about work-related concerns); *Triana Industries, Inc.*, 245 NLRB 1258, 1258 (1979) (discussion among employees about terms and conditions of employment, "is clearly concerted activity" regardless of whether employees were represented by a union or whether discussion "occur[ed] during a period of organizational activity" and may in fact "be necessary as a precursor to seeking union assistance").

[26] Respondent contends that the Group Chats are not protected because they center around employee discussions about wearing masks with BLM printed on them, which Administrative Law Judge Sotolongo found not to qualify as protected concerted activity in the case preceding this one.  *Whole Foods Markets, Inc.*, 2023 WL 8873715.  However, as set forth above, this case centers around information and documents in which employees are discussing their Title VII lawsuit, which is unquestionably Section 7 activity.  Moreover, excerpts from the few pages of the Group Chat that have been produced as part of this proceeding reveal that employees also discussed organizing a walk out, whether or not to unionize, and how to respond to disciplinary actions (R. Exh. 3), all of which independently constitute protected concerted activity for mutual aid and protection.  *Beth Israel Hosp.*, 437 U.S. 491–492; *Triana Industries*, 245 NLRB at 1258.

[27] The Respondent also argues that discovery requests should be evaluated under the Board's "Interrogation" standard, rather than the *Guess?* framework.  As an administrative law judge, I must apply the established Board precedent, which is the *Guess?* framework in this case.  See *Western Cab Co.*, 365 NLRB No. 78, slip op. at fn. 4 (2017), citing *Waco, Inc.*, 273 NLRB 746, 749 fn. 14 (1984).

[28] Complaint par. 6(a).

JD-23-24

Including any supervisor, coworker, former coworkers, . . . peer or subordinate, concerning the allegations in the Complaint." (Jt. Exh. 4 at 6-7.)

5    23. All profiles, postings, messages (including status updates, wall comments, tweets, causes joined, groups joined, activity streams, blog entries, or petitions) posted on any social media site (including but not limited to Facebook, Tik Tok, Instagram, Twitter, MySpace, YouTube, or LinkedIn) concerning Whole Foods, the subject matter of this lawsuit, the damages sought in this lawsuit, the allegations contained in the Complaint, or the defenses asserted by Whole Foods." (Jt. Exh. 4 at 9.)

10

On July 6, Plaintiffs' counsel filed responses to Respondent's First Request for the Production of Documents. In her response she objected to Request No. 9 "to the extent that it seeks employee communications regarding the terms and conditions of their work, [and] constitutes an unfair labor practice in violation of Section 7 and 8(a)(1) of the National Labor
15    Relations Act" and Request No. 23 as it was, among other things, "unduly invasive of [Kinzer's] privacy and confidentiality interests." (Jt. Exh. 17, internal Exh. B at 9, 19.) Nonetheless, Plaintiff Kinzer agreed in both cases to "produce responsive, relevant, nonprivileged documents in her possession, custody, and control." Id.

20                                            Analysis

The General Counsel alleges that Respondent violated Section 8(a)(1) when it issued its first request for the production of documents from Kinzer on May 16. The General Counsel's allegation is that the above information requests are overly broad, specifically as they encompass
25    the production of the Group Chat. The parties have stipulated that Respondent's requests for the Group Chat were relevant to the Title VII proceeding and were not made with an unlawful objective. (Jt. Exh. 31 at pars. 1 and 2.) Given these stipulated facts, I assume without deciding that the first two prongs of the *Guess?* framework are satisfied with regard to the Group Chat allegations,[29] and I must weigh whether Respondent's interest in obtaining the information
30    outweighs the employees' confidentiality interests under Section 7 of the Act.

Respondent alleges that it had an interest in the Group Chat, which is the responsive document at issue here, because it could reveal Kinzer's motives for pursuing her claims and her impressions of the case updates, which could serve to undermine her credibility as one of the
35    named plaintiffs in the case. (R. Br. at 37.) Although, the document requests do meet the FRCP's broad discovery standard,[30] the information sought here is marginal to Respondent's

---

[29] The parties stipulated that the first two prongs of the *Guess?* test were satisfied for all of the allegations regarding the Group Chat (i.e., paragraphs 6(a), 6(b), 6(c), 6(f), 6(g), 6(h), and the portion of 6(e) regarding the Group Chat). (Jt. Exh. 31 at pars. 1 and 2.) Therefore, I assess those allegations only with regard to the third prong of *Guess?* in my analysis below.

[30] The Federal Rules of Civil Procedure have a broad discovery standard: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need

13

JD-23-24

defense in the Title VII litigation.  The Title VII lawsuit focuses on Respondent's retaliatory intent in firing the three named Plaintiffs, one of whom is Kinzer.  Group messages that Respondent had no knowledge of at the time that they terminated Kinzer would have tangential relevance to Respondent's legal defense in the Title VII litigation.

5

Moreover, Respondent's interest in the Group Chat does not outweigh Kinzer's interest in protecting the identities and protected concerted activities of the Respondent's employees who were involved in the Group Chat but were not named in the legal proceedings.[31] The confidentiality interests of employees regarding their Section 7 activity "have long been an

10 overriding concern to the Board."  *National Telephone Directory Corp.*, 319 NLRB 420, 421 (1995).  This right to confidentiality is a "substantial one" because the willingness of employees to engage in protected concerted activity would be "severely compromised" if they knew employers could discover their identities and the nature of their activities." *Guess?*, 339 NLRB at 434. Due to the threat of employer retaliation, the Board and courts have recognized this privacy

15 right is necessary for the "full and free exercise of the organizational rights guaranteed by the [A]ct." *Pac. Molasses Co. v. NLRB*, 577 F.2d 1172, 1182 (5th Cir. 1978) (a "right to privacy" is "necessary to full and free exercise of the organizational rights guaranteed by the [Act]"); see also *Wright Elec., Inc.*, 327 NLRB 1194, 1195 (1999) ("The Board zealously seeks to protect the confidentiality interests of employees because of the possibility of intimidation by employers

20 who obtain the identities of employees engaged in organizing"), enfd. 200 F.3d 1162 (8th Cir. 2000).  Thus, the Plaintiffs have a weighty right to keep their own and the other employees' protected activities confidential.

In similar situations the Board has regularly found that employees' interest in keeping

25 their protected concerted activity confidential outweighs an employer's interest in secondary issues such as questioning a witness's credibility.  See *National Telephone Directory*, 319 NLRB 420, 421 (1995) (finding that the confidentiality interests of employees engaged in protected concerted activity are paramount to the employer's need to obtain the identities of such employees for cross-examination and credibility impeachment purposes); *Veritas Health*

30 *Services, Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (upholding the Board's ruling that the employer's interest in "test[ing] witness credibility" and "more fully develop[ing] the record" had to give way in favor of the employees' rights to remain anonymous); *Laguna College of Art & Design*, 362 NLRB 965, 965 fn. 1 (2015) (upholding hearing officer's determination to quash subpoena seeking pro-union supervisor's personal emails and text messages to coworkers

35 because the "considerable interests" of the workers "in keeping their Section 7 activity confidential" outweighed the employer's need for the subpoenaed information); *Chino Valley Med. Ctr.*, 362 NLRB 283, 283 fn. 1 (2015) (finding employer subpoena seeking communications between employees and their union and communications relating to card distribution and solicitation unlawful because it would subject employees' Section 7 activities to

40 unwarranted investigation and interrogation), enfd. 871 F.3d 767 (9th Cir. 2017).

The Respondent also contends that it has adequately addressed employees' confidentiality concerns through the parties' agreed-upon Protective Order.  As set forth above,

---

not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

   [31] At this point in the litigation, after the complaint was amended, there were only three named Plaintiffs: Kinzer, Michno, and Evans. (Jt. Exh. 3.)

the Protective Order allowed the Plaintiffs to protect the confidentiality of any documents they produced by designating the documents as "Confidential" or "Highly Confidential." (Jt. Exh. 5.) As set forth in the order, documents designated as "Confidential" were prohibited from being used "[f]or any purpose whatsoever other than to prepare for and conduct discovery, hearings and trial in this action, including any appeal thereof." Those marked as "Highly Confidential" were additionally protected by restricting their disclosure to outside counsel and their internal support staff but excluding their release from the parties themselves or their in-house counsel.

I agree that if Plaintiffs were allowed to designate these communications as "Highly Confidential" keeping the information contained therein from Whole Foods' managers, supervisors, and human resources personnel as well as their in-house counsel, their privacy concerns with regard to who was engaged in the exchange would be protected. However, the Protective Order was not in place when this document request was made and the Protective Order itself was not self-enforcing as Respondent's counsel could (and in fact eventually did) object to that designation.

In light of the above, I find that the third-party employees' right to keep their identities and engagement in their protected concerted activity confidential outweighs Respondent's interest in potentially undermining Kinzer's credibility and as such Respondent violated Section 8(a)(1) of the Act by requesting the Group Chat on May 16.

### 2. Respondent's August 25 Deposition Questions[32]

#### Facts

On August 25, Respondent took Kinzer's sworn deposition in the Title VII litigation. During her deposition, Kinzer testified that she provided updates about the Title VII case to former coworkers in a Group Chat during the litigation.[33] (Jt. Exh. 6.) Respondent's counsel asked Kinzer about the content of the group chat and asked her twice for the names of the employees on the Group Chat, and Kinzer provided Respondent's counsel with as many first names as she could remember, which ended up being about nine out of 15. During the deposition, Respondent's counsel also asked Kinzer why names were redacted from some of the text strings that she had already produced, and she responded that the names had been redacted because employees were worried that they would be retaliated against if their names were revealed to Respondent.[34] (Jt. Exh. 6 at 26–32.)

---

[32] Complaint par. 6(b).

[33] This was the first time that Respondent's became aware of the Group Chat on Facebook Messenger which is the focal point of the General Counsel's allegations in the complaint.

[34] "Q. You produced a lot of texts, and the names were redacted. Any idea why those names were redacted?
A. To protect them. To protect their identities.
Q. Why did you want to protect their identities?
A. Because they can be retaliated against for participating.
Q. Participating in what?
A. This lawsuit.
Q. We're talking about people on a text. How are those people participating in a lawsuit

JD-23-24

## Analysis

      The General Counsel alleges that Respondent violated Section 8(a)(1) when it asked
Kinzer for the names of employees who participated in the Group Chat as well as its content.

      As set forth above, the Plaintiffs' interest in maintaining the confidentiality of the
individuals in the Group Chat was high. As explained by Kinzer during the deposition itself, the
individuals were actively afraid that Respondent would retaliate against them if they knew they
were involved in the litigation.[35]

      In its posthearing brief, Respondent asserts that it needed the information as the Group
Chat content could reveal Kinzer's motives for pursuing her claims and her impressions of the
case updates, which could serve to undermine her credibility. While Respondent had a legitimate
interest in some of the information targeted by its deposition questions for impeachment
purposes (such as what Kinzer told those employees about the lawsuit), Respondent's questions
did not focus on that information, but instead focused on the names of the employees on the
Group Chat and there is no explanation from Respondent of how or why the identities of the
individuals on the Group Chat would shed light on Kinzer's credibility.[36]

      In light of all of the above, I find that the employees' privacy rights outweigh
Respondent's need to know who was on the Group Chat and that Respondent violated Section

---

by being on a text?
    A. They're afraid of anything being on the record. Technologically it's out there, that
they participated. So if it's in writing, they're afraid of that being discovered and them being
retaliated against.
    Q. So when you say "participating in a lawsuit," you mean their names appearing on any
document produced in the lawsuit?
    A. Yes.
    Q. Okay. What makes you think they would be retaliated against?
    A. Because we were retaliated against in-store for engaging in this activism.
    Q. Who is "we"?
    A. My co-workers and I.
    Q. Which co-workers are they? (Jt. Exh. 6 at 28-29.)

[35] Kinzer's statements about her co-workers' concerns were not theoretical as was borne out
by the redacted Group Chat pages provided by the Plaintiffs during the litigation. The Group
Chat shows that employees were extremely concerned about being terminated if the Respondent
found out about the content of, and their participation in, the Group Chat. (R. Exh. 3 and 4.)

[36] Even if Respondent did affirmatively assert that its interest in determining the identities of
the individuals would help it to identify potential witnesses, the contention is not compelling
where the Plaintiffs would be calling witnesses with relevant information at the hearing and
Respondent would then have an opportunity to cross examine them. See *National Telephone*,
319 NLRB 420, 421 (1995). Additionally, Respondent had access to its own employees and
could question them in accordance with *Johnnie's Poultry* safeguards. See *Johnnie's Poultry
Co.*, 146 NLRB 770, 774–775 (1964), enforcement denied, 344 F.2d 617 (8th Cir. 1965).

8(a)(1) of the Act when it asked Kinzer for the content and names of the individuals in the Group Chat during her deposition.

### 3. Respondent's September 27 Request for Production of the Facebook Group Chat[37]

5

#### Facts

After Kinzer's deposition, in a letter dated September 27, Respondent requested that
10  Plaintiffs provide, inter alia, "[a]ll *non-privileged* communications relating to this lawsuit that Savannah Kinzer exchanged with third parties who are not a party to this lawsuit, including, but not limited to, group messages in which she relayed privileged information to those third parties, thereby waiving any privilege that may have attached."  (Jt. Exh. 7) (emphasis added).

15  On November 9, Plaintiffs' counsel responded via email that they would not produce the Group Chat referenced by Kinzer in her deposition as it was privileged. (Jt. Exh. 8.) In response Respondent emailed Plaintiffs' counsel back the next day and requested that the Plaintiffs provide a privilege log to support its privilege claim and on November 11, Respondent filed a letter with the Court concerning the Plaintiffs' refusal to provide the Group Chat.  (Jt. Exh. 9.)  In
20  the letter, Respondent asserted that Plaintiffs should be required to provide Respondent with a privilege log as required by Local Civil Rule 26.2, for the Group Chat since it had asserted that the material was privileged.

#### Analysis

25

In light of the exchange between the parties, I find that Respondent did not violate Section 8(a)(1) here as Respondent initially requested "non-privileged communications" and its response to Plaintiff's privilege claim was not to demand that the documents be produced, but to ask that the Plaintiffs provide a privilege log as was required by the Court's Local rules. In light
30  of all of the above, including the context of the exchange between the parties, I recommend that the Board dismiss paragraph 6(c) of the complaint.

### 4. Respondent's December 1 Letter to the Court regarding the Plaintiffs' Privilege Log[38]

35

#### Facts

On November 12, the Court ordered the Plaintiffs to provide a privilege log describing the basis for withholding the Group Chat and the Plaintiffs provided a privilege log to
40  Respondent on November 23, via email. (Jt. Exh. 10 and 11.) In the privilege log the Plaintiffs' attorney described the communications as privileged under attorney-client privilege as well as under Section 7 of the NLRA and describes the communications as: "Communications between Savannah Kinzer and other Whole Foods employees, including attorney Anastasia Doherty, Esq., discussing organizing actions at Whole Foods Market, Inc."  (Jt. Exh. 10 at 2.)

---

[37] Complaint par. 6(c).
[38] Compliant par. 6(e).

On December 1, Respondent filed a letter with the Court contending that the Plaintiffs had failed to demonstrate that the Group Chat was covered by a cognizable privilege. (Jt. Exh. 12.) Respondent concludes the letter stating that they would continue to confer with the Plaintiffs, but that if Plaintiffs were unable to provide information sufficient to maintain attorney-client privilege, Respondent would have to bring the issue before the Court.

**Analysis**

In the complaint, the General Counsel alleges that Respondent violated Section 8(a)(1) on December 1, when it wrote a letter asking the Court to compel the Plaintiffs to produce the Group Chat. However, Respondent did not request that the Court compel the production of the Group Chat in its letter, but rather stated that it would continue to confer with the Plaintiffs, but that it may have to bring the matter before the Court if the parties are unable to resolve the privilege claim.

In light of the above, I do not find that the actions Respondent took on December 1, updating the Court regarding the status of negotiations with the Plaintiffs regarding the Group Chat privilege assertions, constitutes a violation of Section 8(a)(1).

**5. Respondent's January 21, 2022 Refusal to Agree to Redactions[39]**

**Facts**

On January 12, 2022, the Court ordered the Plaintiffs to produce the Group Chat to Respondent by January 21, 2022. (Jt. Exh. 18.) On January 20, 2022, the Plaintiffs emailed Respondent asking if it would accept a copy of the Group Chat that was marked "Attorneys eyes only" and that contained Kinzer's communications but had "communications from other employees" redacted. (Jt. Exh. 19 at 4.) Respondent emailed back the next day that they would not agree to the redactions but suggested that the Plaintiffs' concerns might be accommodated by designating the Group Chat as "Highly Confidential" consistent with the Protective Order already in place. In a series of emails between the parties, Respondent repeatedly objected to the redactions and made clear that it would not waive its right to challenge any of the confidentiality designations made by the Plaintiffs. (Jt. Exh. 19 at 2.) In fact, the Respondent's position was that it would not be able to properly assess the confidentiality designation until the redactions were removed. Id.

In response, the Plaintiffs produced a portion of the Group Chat to Respondent, designating its contents as "Highly Confidential – Attorneys' Eyes Only,"[40] and redacting all employee names except the names of the named Plaintiffs and their attorney. (Jt. Exh. 19.)

---

[39] Complaint par. 6(f).
[40] On February 7, 2022, Respondent asked Plaintiffs for their consent to allow Whole Foods' in-house counsel to review documents they designated as "Highly Confidential." Plaintiffs consented on February 15, 2022. (Jt. Exh. 27 at 6.)

**Analysis**

The General Counsel alleges that the Respondent violated Section 8(a)(1) of the Act
5   when it refused to consent to Plaintiffs' request to redact the names of current and former
employees from the Group Chat prior to its production.

Respondent alleges that the Plaintiffs' privacy concern is cured by designating the Group
Chat as "Highly Confidential" since that designation would keep the documents out of the hands
10   of the employer and the employer's in-house counsel.  This might be true if Respondent had
waived its right to oppose the Plaintiffs' "Highly Confidential" designation, but Respondent
resolutely did not.  As set forth above, Respondent repeatedly explicitly expressed that it would
not waive its right to oppose the confidentiality designation. In fact, Respondent's position was
that it would not be able to properly assess the confidentiality designation until the redactions
15   have been removed.  As such, the Respondent placed the Plaintiffs in a catch 22 scenario. Once
the Plaintiffs remove the redactions, Respondent could still oppose the "Highly Confidential"
designation which would expose the Group Chat to the employer and the public if the Court
agreed with Respondent about the designation.

20   Here Respondent's argument is even less compelling as I must weigh Respondent's
interest in obtaining a completely unredacted version of the Group Chat against the nonparty
employees' privacy rights.  As Respondent's purported reason for requesting the Group Chat was
to assess Kinzer's credibility and motivation for filing the suit, it appears that Respondent would
be able to assess that information from the redacted Group Chat, as Kinzer's name and the
25   content of her contributions to the Group Chat would be fully in view.  Significantly, the Court
eventually allowed the Plaintiffs' redaction of the names of the nonparty employees and former
employees from the Group Chat.[41]

In light of all of the above, I find that Respondent violated Section 8(a)(1) when it
30   opposed the Plaintiffs' redaction proposal *and* refused to waive its right to oppose the Plaintiff's
"Highly Confidential" designation.

### 6.  Respondent's April 4, 2022 Objection to Plaintiffs' Motion to Seal[42]

35                                       **Facts**

On March 18, 2022, Respondent filed a Reply Memorandum in Further Support of its
Motion for Summary Judgment and attached as exhibits two excerpts from the Group Chat
which were provisionally filed under seal pursuant to the Protective Order.  (Jt. Exh. 25.)  These
40   excerpts are in the record, subject to a protective order in this case.

The excerpts from the Group Chat include employee discussions regarding organizing an
employee walk out, coordinating responses to employer disciplinary actions, and discussions of
the Title VII lawsuit. (R. Exh. 3.) The excerpts also explicitly reveal the chat participants'

---

[41] (Jt. Exh. 30.)
[42] Complaint par. 6(g).

JD-23-24

palpable fear that they would be retaliated against if Whole Foods discovered their involvement in the Group Chat.  In addition, even though the third-party employee names were redacted in the chat excerpts, there are contextual parts of the Group Chat which could easily indicate to the employer, the identities of the individuals participating in the chat.

On March 22, 2022, the Plaintiffs moved to permanently seal these exhibits pursuant to the procedures set forth in the Protective Order. (Jt. Exh. 26.) As the General Counsel points out, failing to seal these excerpts would allow the public, including Whole Foods' managers, supervisors, and human resources staff, to access them freely.

On April 4, 2022, Respondent filed its Opposition to Plaintiffs' Motion to Seal. (Jt. Exh. 27.)  In its Opposition Brief, Respondent asserts that the excerpts do not implicate Section 7 protected concerted activity and that as produced with redactions intact, they do not contain any personally identifying information, with the exception of Plaintiff Kinzer whose activity is already known to Respondent through her Title VII and NLRB activity.

## Analysis

The General Counsel alleges that the Respondent violated Section 8(a)(1) of the Act by opposing the Plaintiffs' motion to seal excerpts from the Group Chat on April 4, 2022.

As set forth above, the section of the Group Chat that Respondent attached to their Reply Memorandum contains examples of third-party individuals engaging in protected concerted activity: employee discussions regarding organizing an employee walk out, coordinating responses to employer disciplinary actions, and discussions of the Title VII lawsuit.  In addition, the context of the excerpts could easily reveal the identities of some of the Group Chat participants.

Respondent's interest in unsealing the Group Chat would serve to allow Whole Foods' managers, supervisors, and human resources staff and the public to review the four pages of the Group Chat.  Respondent has an interest in aiding in its own defense by having access to the same evidence as its attorneys, but that interest is outweighed by third-party privacy rights to keep their identities and protected concerted activities private.  As set forth above, the third-party privacy concerns here are far from theoretical, as excerpts from the Group Chat lay bare the employees' fear of employer retaliation.

In light of the above, I find merit to this allegation.

JD-23-24

**7. Respondent's May 5, 2022 Objection to Maintaining the Highly Confidential Designation and Redactions to the Group Chat[43]**

### Facts

5      On April 21, 2022, Plaintiffs filed a motion to maintain the "Highly Confidential" designation and redactions applied to the Group Chat. (Jt. Exh. 28.)  In its motion, Plaintiffs urged the Court to maintain the "Highly Confidential" designation for the Group Chat as well as maintaining the redactions of all third-party names.

10      Respondent filed its opposition to plaintiffs' motion on May 5, 2022. In its opposition brief Respondent objected to the "Highly Confidential" designation *and* objected to the redactions of non-party employee names.  (Jt. Exh. 29 at 12.)  Respondent also set forth in its brief that "[i]f the Highly Confidential designation is removed from some or all of the chats, Whole Foods would be willing to explore the acceptability of redactions" and "would also be
15      willing to individually evaluate the specific chats where Plaintiffs claim, 'the receiving party can discern of the non-parties by reviewing 'contextual information' contained in the document." (Jt. Exh. 29 at 12.)

20      On June 10, 2022, the Court issued an order in which it allowed for the continued redaction of third-party names but denied the Plaintiffs' motion to permanently seal and to maintain the "Highly Confidential" designation on the Group Chat. (Jt. Exh. 30.)

### Analysis

25      The General Counsel alleges that Respondent violated Section 8(a)(1) when it opposed the Plaintiffs' motion to maintain redactions and its "Highly Confidential" designation to the Group Chat. In its opposition brief, Respondent explicitly opposes both the "Highly Confidential" designation and the redactions on the Group Chat.  Although, Respondent contends in its posthearing brief in this case that it was open to either the "Highly Confidential"
30      designation or the redactions, this is not borne out by the record.  Respondent's brief to the Court sets forth: "If the Highly Confidential designation is removed from some or all of the chats, Whole Foods would be willing to *explore* the acceptability of redactions" and "would also be willing to individually *evaluate* the specific chats where Plaintiffs claim, 'the receiving party can
35      discern of the non-parties by reviewing 'contextual information' contained in the document." (Jt. Exh. 29 at 12.) (emphasis added).  This equivocal language does not provide third-party employees with any actual protection from exposure. Thus, Respondent's position leaves the third-party participants without a guarantee of any privacy protections for their Section 7 activity.

40      For the same reasons as set forth above, I find that third-party privacy rights outweigh the Respondent's interest in the unredacted and unprotected version of the Group Chat.

---

[43] Complaint par. 6(h).

JD-23-24

### 8. Respondent's Requests for Michno's Board Affidavit[44]

#### Facts

On September 8, Respondent took the sworn deposition of Plaintiff Christopher Michno (Michno) in the Title VII litigation. During that deposition, Michno testified that he had reviewed an affidavit taken by a Board agent in October 2020 when he was preparing for his deposition. (R. Exh. 2 at 16.) When Respondent's counsel asked Plaintiffs' counsel if the affidavit that Michno was referring to had already been produced, Plaintiffs' counsel responded that it had not because it was related to a confidential NLRB proceeding.

On November 11, Respondent filed a letter with the Court contending that the Michno Board affidavit is discoverable and should be produced as Michno used it in preparation for his Title VII litigation deposition. (Jt. Exh. 9.) On December 1, Respondent filed another letter with the Court again asking it to compel the Plaintiffs' production of Michno's affidavit. (Jt. Exh. 12.)

#### Analysis

The General Counsel alleges that Respondent violated Section 8(a)(1) of the Act on both November 11, and December 1, when Respondent wrote letters to the Court urging it to compel the production of Plaintiff Michno's Board affidavit. Section 102.118(e) of the Board's Rules and Regulations provides that a Board affidavit may be disclosed only upon a motion by the respondent, for the purposes of cross-examination, after a witness has testified in a Board proceeding.[45] As has been recognized and endorsed by the Supreme Court, the policy protects the Board's processes by guarding against the inhibitory effect that an employer's prehearing demand for Board affidavits would have on employees' willingness to provide statements to the Board or otherwise cooperate with Board agents. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); see also *Hilton Credit Corp.*, 137 NLRB 56, 56 fn. 1 (1962).

The Board has a well-established policy of protecting confidential witness affidavits from prehearing disclosure. It has consistently held that an employer's prehearing requests for such affidavits violates Section 8(a)(1),[46] and finds such requests to be inherently coercive and unlawful. See *Inter-Disciplinary Advantage*, 349 NLRB 480, 505 (2007) (employer requests for copies of affidavits provided by employees to the Board is inherently coercive and unlawful); *Frascona Buick, Inc.*, 266 NLRB 636, 647 (1983) (same). Nevertheless, prior to the Board

---

[44] Complaint par. 6(d) and 6(e).

[45] *Wendt Corp.*, 369 NLRB No. 135, slip op. at 1, fn. 1(2020); *H.B. Zachary*, 310 NLRB 1037, 1038 (1993); *Edwards Trucking*, 129 NLRB 385, 386 fn.1 (1960).

[46] *Inter-Disciplinary Advantage*, 349 NLRB 480, 505 (2007); *Wire Products Mfg. Corp.*, 326 NLRB 625, 628 (1998); *Astro Printing*, 300 NLRB 1028, 1029 fn. 6 (1990); *Frascona Buick, Inc.*, 266 NLRB 636, 647 (1983); *Ingram Farms*, 258 NLRB 1051, 1054 (1981); *Santa Barbara News-Press*, 358 NLRB 1539 (2012), incorporated by reference in 361 NLRB 903 (2014), enfd. per curium sub nom; *Ampersand Publishing, LLC v. NLRB*, Nos. 15-1074, 15-1082, 2017 WL 1314946 (D.C. Cir. March 3, 2017); *Tracy Toyota*, 372 NLRB No. 101 (2023).

JD-23-24

hearing, Respondent demanded Michno's confidential Board affidavit multiple times.[47] The Respondent thus knowingly acted contrary to established Board policy and precedent designed to protect affiants involved in Board proceedings from such chilling and coercive actions. Thus, in repeatedly demanding that Michno turn over his Board affidavit, the Respondent had an

5  objective that was illegal under Federal labor law. *Santa Barbara News-Press*, 358 NLRB 1539, 1542 (2012), incorporated by reference in 361 NLRB 903 (2014); *Dilling Mechanical Contractors*, 357 NLRB 544, 546 (2011); *Wright Electric, Inc.*, 327 NLRB 1194, 1195 (1999), enfd. 200 F.3d 1162 (8th Cir. 2000); *Manno Electric*, 321 NLRB 278, 297–298 (1996), enfd. 127 F.3d 34 (5th Cir. 1997).

10

In light of the above, I find that these requests are unlawful under the second prong of *Guess?*, as they had an unlawful objective. *Santa Barbara News-Press*, 358 NLRB 1539 (2012), incorporated by reference in 361 NLRB 903 (2014); *Dilling Mechanical Contractors*, 357 NLRB 544, 546 (2011).

15

Respondent's contentions to the contrary are unavailing. First, Respondent contends that it could not have had an unlawful motive as the document requested was relevant to the Title VII lawsuit. However, the *Guess?* framework specifically separates inquiries of relevance and unlawful objective into two distinct steps in the analysis. Thus, the question of relevance is

20  separate from the question of whether the request has an unlawful objective. As set forth above, it is well settled that requesting Board affidavits prior to the employee's testimony in a Board proceeding is inherently coercive and unlawful regardless of whether or not the document is relevant to the litigation.[48]

25  Respondent also contends that its demand that the Plaintiffs turn over Michno's affidavit is not unlawful because in this case, the Respondent's demand for the Board affidavit was not accompanied by other coercive behavior. However, Respondent's interpretation ignores that the Board has consistently found that requests or demands for Board affidavits before the witness has testified in a Board hearing is *inherently* coercive and unlawful. See *Inter-Disciplinary*

30  *Advantage*, 349 NLRB 480, 505 (2007); *Wire Products Mfg. Corp.*, 326 NLRB 625, 628 (1998). In fact, none of the cases cited by the General Counsel or Respondent has language endorsing that any such demand or request for affidavits needs to be accompanied by other coercive conduct to violate Section 8(a)(1) as the Board has repeatedly found that it is the request itself that is inherently coercive.

35

---

[47] It is undisputed that Respondent's demands for the Michno affidavit were made prior to Michno's testimony at the NLRB hearing which opened on March 1, 2022. *Whole Foods Markets, Inc.*, 01–CA–263079 (2023) at 1.

[48] Respondent, without citing any legal source, also contends that the Board law does not support the General Counsel's claim that the request was unlawful, "because the Board has never found a request for an affidavit unlawful when a Federal judge ordered its production pending civil litigation." (R. Br. at 30.) As set forth above, the case before me is whether Respondent's actions violate Sec. 8(a)(1) of the Act under current Board precedent, which is the *Guess?* test here. *Western Cab Co.*, 365 NLRB No. 78, slip op. at 1 fn. 4 (2017).

JD-23-24

In light of the above, I find that Respondent violated Section 8(a)(1) when it repeatedly asked the Plaintiff Michno to turn over his Board affidavit before he had testified in the Board proceeding.

CONCLUSIONS OF LAW

1. The Respondent, Whole Foods Market, Inc., is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

2. The Respondent violated Section 8(a)(1) of the Act on May 17, 2021, and August 25, 2021, by asking its former employee for information about its employees' protected concerted activity.

3. The Respondent violated Section 8(a)(1) of the Act on November 11, 2021, and December 1, 2021, by requesting an affidavit from an employee that they provided to a Board Agent in the course of an unfair labor practice investigation.

4. The Respondent violated Section 8(a)(1) of the Act on January 21, 2022, April 4, 2022, and May 5, 2022, by objecting to redactions and/or confidentiality designations, which protected the identity of employees and ex-employees engaged in protected concerted activity.

5. The above unfair labor practices affect commerce within the meaning of Section 2(2), (6), and (7) of the Act.

6. The Respondent has not violated the Act in any of the other manners alleged in the complaint.

REMEDY

Having found that the Respondent, Whole Foods Markets, Inc., engaged in certain unfair labor practices, I find that it must be ordered to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act.

In particular, I shall order the Respondent to reimburse, with interest, the individuals upon whom the unlawful discovery requests were served for all legal and other expenses incurred, to date and in the future, in defending against the disclosure of an affidavit that Christopher Michno provided to the Board and in having to secure an order from the Court to allow for the redaction of group text messages after Respondent denied Plaintiffs' redaction request. Interest on that amount is to be paid at the rate prescribed in *New Horizons*, 283 NLRB 1173 (1987), compounded daily as prescribed in *Kentucky River Medical Center*, 356 NLRB 6 (2010). The Respondent will also be ordered to post the notice attached hereto as "Appendix."

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended[49]

---

[49] If no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations,

24

JD-23-24

ORDER

The Respondent, Whole Foods Markets, Inc., its officers, agents, successors, and
assigns, shall

1. Cease and desist from

(a) Issuing discovery requests which coercively seek information about employees' or ex-
employees' protected concerted activity.

(b) Asking individuals to disclose the names of employees or ex-employees who
participated in a group chat on Facebook Messenger in which they discussed a class
action lawsuit and working conditions or otherwise participated in protected
concerted activity.

(c) Requesting that a court in a civil action compel the production of an affidavit that an
individual had provided to the National Labor Relations Board in an unfair labor
practice investigation.

(d) Objecting to redactions and/or confidentiality designations that are related to
protecting the identities of employees and/or ex-employees engaged in protected
concerted activities.

(e) In any like or related manner interfering with, restraining, or coercing employees in
the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Reimburse the individuals upon whom the unlawful discovery requests were served
for all legal and other expenses incurred in defending against those requests, to date
and in the future, in the manner set forth in the remedy section of this decision.

(b) Post at its stores located in Cambridge, Massachusetts and Berkeley, California,
copies of the attached notice marked "Appendix." Copies of the notice, on forms
provided by the Regional Director for Region 1, after being signed by the
Respondent's authorized representative, shall be posted by the Respondent and
maintained for 60 consecutive days in conspicuous places, including all places where
notices to employees are customarily posted. In addition to physical posting of paper
notices, notices shall be distributed electronically, such as by email, posting on an
intranet or an internet site, and/or other electronic means, if the Respondent

the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules,
be adopted by the Board and all objections to them shall be deemed waived for all purposes.

JD-23-24

customarily communicates with its employees by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, the Respondent has gone out of business or closed a facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, copies of the notice to all current employees and former employees employed by the Respondent at its stores located in Cambridge, Massachusetts and Berkeley, California since May 16, 2021.

(f)  Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Regional Director attesting to the steps the Respondent has taken to comply.

IT IS FURTHER ORDERED that the complaint is dismissed insofar as it alleges violations of the Act not specifically found.

IT IS FURTHER ORDERED that the protective order entered into during the hearing prohibiting the parties from disclosing certain confidential information and confidential exhibits (except as permitted by the terms of the protective order) shall be continued in full force and effect.

Dated, Washington, D.C., April 11, 2024.

Susannah Merritt
Administrative Law Judge

26

JD-23-24

# APPENDIX
## NOTICE TO EMPLOYEES
### MAILED BY ORDER OF THE NATIONAL LABOR RELATIONS BOARD
### AN AGENCY OF THE UNITED STATES GOVERNMENT

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO:
      Form, join, or assist a union
      Choose representatives to bargain with us on your behalf
      Act together with other employees for your benefit and protection
      Choose not to engage in any of these protected activities.

WE WILL NOT issue discovery requests in a lawsuit which coercively seek information about the protected concerted activity that you or other individuals have engaged in.

WE WILL NOT ask individuals to disclose the names of employees or ex-employees who participated in a group chat on Facebook Messenger in which they discussed a class action lawsuit and working conditions or otherwise participated in protected concerted activity.

WE WILL NOT request that a court in a civil action compel the production of an affidavit that an individual had provided to the National Labor Relations Board in an unfair labor practice investigation.

WE WILL NOT object to redactions and/or confidentiality designations that are related to protecting the identities of individuals engaged in protected concerted activities.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.

WE WILL reimburse, with interest, the individuals upon whom we served the unlawful discovery requests for all legal and other expenses incurred, to date and in the future, in defending against those requests.

**Whole Foods Market, Inc.**
_____

(Employer)

Dated   _____   By   _____

                                   (Representative)                  (Title)

JD-23-24

The National Labor Relations Board is an independent Federal agency created in 1935 to enforce the National Labor Relations Act. It conducts secret-ballot elections to determine whether employees want union representation and it investigates and remedies unfair labor practices by employers and unions. To find out more about your rights under the Act and how to file a charge or election petition, you may speak confidentially to any agent with the Board's Regional Office set forth below.  You may also obtain information from the Board's website:  www.nlrb.gov

10 Causeway Street, 6th Floor, Boston MA 02222-1072
(617) 565-6700, Hours: 8:30 a.m. to 5 p.m.

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/01-CA-288032 or by using the QR code below.  Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.



**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE**
THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE
DATE OF POSTING AND MUST NOT BE ALTERED, DEFACED, OR COVERED BY ANY
OTHER MATERIAL. ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE
WITH ITS PROVISIONS MAY BE DIRECTED TO THE ABOVE REGIONAL OFFICE'S
COMPLIANCE OFFICER (857) 317-7816.